In re Stuart R. ROSS, Debtor.

GENERAL AMERICAN CORP., et al., Plaintiffs,

v.

MERRILL LYNCH COMMODITIES, INC., et al., Defendants.

Bankruptcy No. 83 B 11757 (PA).
Adv. No. 85–5006A.

United States Bankruptcy Court,
S.D. New York.

Sept. 19, 1986.

See also, Bkrtcy., 63 B.R. 951.

Saxe, Bacon & Bolan, P.C., New York City by Filip L. Tiffenberg, for plaintiffs.

Certilman Haft Lebow Balin Buckley & Kremer by Martin F. Brecker, Law Offices of Stuart A. Jackson, New York City, for Stuart R. Ross.

Barrett Smith Schapiro Simon & Armstrong, New York City, for Merrill Lynch Futures, Inc.

Rosenman Colin Freund Lewis & Cohen, New York City by Eugene A. Gaer, pro se.

Barst, Mukamal & Babitt, New York City by Stuart Bernstein, for defendants.

Robson, Miller & Osserman, Cooper Cohen Singer Ecker & Shainswit, New York City by Morton S. Robson, for Robson & Miller.

MEMORANDUM DECISION AND ORDER DENYING MOTION TO REMAND AND GRANTING MOTION FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

This case is yet another example of the enormous appetite of Stuart R. Ross ("Ross") for litigation, particularly against those who have had the effrontery to sue him. In early January 1985, Merrill Lynch Commodities, Inc. ("Merrill"), Rosenman, Colin, Freund, Lewis & Cohen, Esqs. ("Ro-senman"), Robson & Miller, Esqs. ("R & M") and WLW Funding Corporation ("WLW") (collectively the "Defendants") filed a notice of removal and effected removal to this court of an action that had been brought against them on or about December 18, 1984 in the Supreme Court of the State of New York, County of New York, Index No. 29254/84, bearing the caption *General American Corp., et al. v. Merrill Lynch Commodities, Inc., et al.* (the "Damages Action"). The Defendants filed an answer to the complaint in the Damages Action on January 11, 1985. The answer denied the material allegations of the complaint and asserted as an affirmative defense that the complaint failed to state a claim upon which relief could be granted.

By motion filed with this court on March 19, 1985, the plaintiffs in the Removed Action, who are a number of entities owned or controlled by Ross, sought an order of abstention and/or remand pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 1452. The Defendants opposed the plaintiffs' motion and also made a cross motion for summary judgment.

For the reasons which follow, the court has determined that it should neither abstain from hearing nor remand the Removed Action. Further, the court has determined that the Defendants' cross motion for summary judgment should be granted and judgment in favor of the Defendants entered.

STATEMENT OF FACTS

The Defendants in the Removed Action filed an involuntary petition against Ross on December 8, 1983 (the "Ross Involuntary").[1] Shortly after filing the involuntary petition, the Defendants filed a motion supported by an 18–page application (the

---

[1] No order for relief has yet been entered in the Ross Involuntary. By decision dated August 22, 1986, this court found, *inter alia,* that there were sufficient eligible petitioners. See *In re Stuart R. Ross,* 63 B.R. 951 (1986). Familiarity with that decision will be presumed, particularly the portions describing the claims of the petitioners. In addition, familiarity will be presumed with this court's decision in *In re General American Communications Corporation,* 63 B.R. 534 (Bankr.S.D.N.Y.1986) which extensively discussed the claims of two of the petitioners.

"Motion")[2] seeking the appointment of an interim trustee pursuant to Bankruptcy Code § 303(g)[3] to take possession of Ross' property as well as for injunctive relief against the transfer of assets by Ross or any corporations, partnerships or other entities, including twenty-three named entities,[4] owned or controlled directly by Ross or the named entities (the "Corporations"). The Motion alleged that there was a substantial likelihood that at trial the movants would be able to establish that "each of the corporate defendants is no more than the alter-ego of Ross and that they are all part of the massive scheme perpetrated by Ross to shield assets from creditors." Ross vigorously opposed the Motion. A 21–page affidavit with five exhibits was submitted in opposition to the Motion. Thereafter, and on January 6, 1984, the bankruptcy court approved a stipulation (the "Settlement Stipulation") between the Defendants in their capacity as petitioners in the Ross Involuntary, Ross, and the Corporations. The five-page Settlement Stipulation, which was signed by Ross individually and on behalf of the Corporations, terminated the litigation on the relief requested in the Motion.[5]

This Damages Action alleges that the Defendants entered into a "malicious and wrongful conspiracy designed to wrongfully and without justification cause irreparable injury to Ross and cause his financial ruin." Complaint ¶ 32. Pursuant to the conspiracy, it is alleged that the Defendants wrongfully filed the involuntary petition and sought the appointment of an interim trustee and the grant of injunctive relief. It is alleged that the relief was sought not to preserve rights in the Corporations but rather for the *sole* purpose of unlawfully harming Ross personally and in his business dealings by attempting to interfere with the free and lawful day-to-day business operation of the Corporations in which Ross has a financial stake. By restricting Ross and the Corporations it is alleged the Defendants intended to and did achieve an unfair and unjust advantage over Ross. The complaint goes on to allege that Ross entered into the Settlement Stipulation on behalf of the Plaintiffs under severe duress and without regard to the adverse impact and damages which the Settlement Stipulation would have on the business affairs of the Plaintiffs. As a

**2.** The allegations in the application were based, in part, on sworn testimony given by Ross at different times in various litigations. After reviewing a number of alleged discrepancies, it was stated in the application that Ross' deposition testimony established that he was "an incredible liar."

**3.** Code § 303(g) provides that the court may appoint an interim trustee before the entry of an order for relief "if necessary to preserve the property of the estate or to prevent loss to the estate". The debtor may regain possession upon posting a bond acceptable to the court. A companion section, Code § 303(f), provides that any business of the debtor may continue to operate and the debtor may continue to use, acquire, or dispose of property as if the involuntary case had not been commenced "except to the extent that the court orders otherwise". The commencement of an involuntary case by the filing of the petition creates an estate comprising of all legal and equitable interests of the debtor in property as of the commencement of the case. See Code § 541(a). See also 4 Collier on Bankruptcy (15th Ed.1986), ¶ 541.04.

**4.** All of the entities which were named in the motion are plaintiffs in the Removed Action. In addition, four other Ross-related entities are

plaintiffs in the Removed Action, Tele-features Corporation, General American Advertising Corp., General American Licensing Corp., General American Properties Corp.

**5.** The Settlement Stipulation provides that Ross and the Corporations are restrained from transferring funds other than in the ordinary course of business. Ross is permitted to draw an aggregate weekly salary of $5,000. Ross and the Corporations are to provide semi-monthly accountings of all receipts and disbursements and to make their books and records available for inspection. Ross and the Corporations cannot pay any debt or expense in excess of $10,000 without prior notice. Transfers between the Corporations and to third parties are restricted. The Settlement Stipulation provides

"7. Ross shall personally be held accountable and responsible for the violation of any term hereunder by Ross or any of the Defendant Corporations, and shall personally be subject to sanctions for any such violation. The terms of this stipulation shall also be binding upon any corporation or entity owned or controlled, directly or indirectly by Stuart Ross."

result of the Defendants' alleged wrongful inducement of Ross to breach his duties to the Plaintiffs, it is alleged that each plaintiff has been damaged in an amount not less than $1,000,000 and is entitled to punitive damages of $3,000,000 each. In total, all of the Plaintiffs seek $26,000,000 in actual damages and $78,000,000 in punitive damages. The second cause of action alleges that the alleged wrongful procurement of the Settlement Stipulation and breach of Ross' fiduciary duties constitute an intentional and malicious infliction of commercial injury without excuse or justification and that by reason of the alleged *prima facie* tort each plaintiff is entitled to damages of not less than $1,000,000 each and punitive damages of $3,000,000 each. The third and fourth causes of action, which each seek damages in the same amount as the prior counts, assert that the Defendants' actions which form the basis of the prior counts are also an alleged unlawful and intentional interference with prospective and existing business relationships.

Ross is not named as a plaintiff in the Damages Action. However, he verified the complaint and stated "I am an officer of the plaintiff corporations, I have read the annexed complaint know the contents thereof and the same are true to my knowledge and belief." Paragraph 31 of the complaint alleges Ross "is an officer and/or director of each of the plaintiff corporations and as such has fiduciary obligations to act in their best interests."

The Settlement Stipulation was the subject of two motions in Summer 1984. The Defendants sought to enforce its provisions for accountings. Ross and the Corporations sought to have the Stipulation vacated on the grounds that, among other things, it had been entered into only as a temporary expedient. On February 27, 1985, this court denied the motion to vacate the Settlement Stipulation finding that the Stipulation should be complied with but finding a further hearing would be re-

quired before the contempt request could be determined. In refusing to vacate the Settlement Stipulation, this court found that the Stipulation embodied a reasonable subject matter in light of the prospective issues, that it was entered into freely in order to avoid the necessity of hearings which would raise many issues and that the stipulation contained a number of concessions in Ross' favor as well as imposing certain burdens on him. Further, it was found that the stipulation did not markedly favor one side or the other and that it was a reasonable settlement in light of the possible outcome of the Motion, inasmuch as an interim trustee, if appointed, would have as a first and foremost duty undertaken to exercise control over the Corporations.[6]

## DISCUSSION

### Motion To Abstain Or Remand

The Plaintiffs argue that this court should remand or abstain with respect to the Damages Action because the Damages Action does not raise any questions under the Bankruptcy Code or federal law and only seeks recovery based on New York state common law tort principles; Ross is not a party to the Damages Action; and the determination of the matter will not "have any effect whatsoever on the administration of the bankruptcy proceeding." Affidavit of Roy M. Cohn Sworn to March 13, 1985 ("Cohn Affidavit") at ¶ 2. It is also stated that the Damages Action is entirely independent of the bankruptcy case and "there is simply no basis for preventing this state court action to be heard in the New York State Supreme Court." Cohn Affidavit at ¶ 3.

Counsel for Ross, a firm other than the one representing the Plaintiffs, has submitted a statement in support of the Plaintiffs' motion in which it is argued as follows:

"The validity or enforceability of the stipulation is unrelated to the plaintiffs' claims. Notwithstanding the validity or

6. This is so because an interim trustee is required to preserve the property of the estate and

Ross' interest in the Corporations would be property of the estate.

enforceability of the stipulation against Mr. Ross, there is yet to be determined the separate issue of whether the defendants' conduct fortuitously[7] prejudiced or interfered with plaintiffs' rights.

"3. The action sought to be removed is totally unrelated to the bankruptcy case in that the recovery, if any, would not be property of the estate and the liability, if any, would be Debtor's or the estate's liability."

In response, the Defendants have urged "Ross purported to create state rights on * * * [the Plaintiffs'] behalf by swearing to his own improper conduct without joining himself as a defendant. But when the smoke clears, it is obvious that the plaintiffs' claims are so inextricably intertwined with the Ross bankruptcy case that they should not be permitted to pursue them in another forum in which they are not subject to this court's scrutiny." Affidavit of Stuart M. Bernstein Signed April 4, 1985 (the "Bernstein Affidavit") at 9.

▉ Under 28 U.S.C. § 1452(a), removal of a civil action from a state court may be had if the district court has jurisdiction under 28 U.S.C. § 1334. That section provides in subsection (b) that

"the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

As set forth above, the Damages Action seeks damages arising out of an order of this court. It seems indisputable that the Settlement Stipulation is integral to the Ross Involuntary and further that any recovery in the Damages Action would ultimately rebound to the benefit of Ross, and therefore the estate,[8] through enhancing the value of his corporations. Certainly the Damages Action involves an order of the bankruptcy court relative to a matter affecting the administration of an estate. Moreover, it relates to Code § 303(i) which provides a statutory basis for a cause of action against the petitioners if an involuntary petition is dismissed and bad faith is involved or an interim trustee was appointed.

Ross, the involuntary Debtor, verified the complaint in the Damages Action as an officer of the Plaintiffs and asserted his own breach of fiduciary duty to the Plaintiffs. The damages sought are substantial, an aggregate of $26,000,000 actual damages on each count and $78,000,000 punitive damages on each count. The Damages Action confronts this court with an involuntary debtor challenging the enforceability of an order of this court through the indirection of having the corporations on whose behalf he acted in consenting to the order sue the petitioning creditors in state court. This is no mere garden variety state law contract or tort action having only incidental relationship to the bankruptcy case.

The Second Circuit has stated:

"As a general rule, a bankruptcy court has no jurisdiction to decide controversies between those parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy."

*In re Shirley Duke Associates*, 611 F.2d 15, 18 (2d Cir.1979) (Bankruptcy Act).

Subsequently, the Second Circuit in *In re Turner (Turner v. Ermiger)*, 724 F.2d 338 (2d Cir.1983) found no "related to" jurisdiction over a suit brought by a Chapter 7 debtor on a cause of action claimed and allowed as an exemption.[9] The Second Circuit found an absence of any significant connection with the debtor's bankruptcy case as there was no showing that the outcome of the action would have any ef-

---

**7.** At oral argument, Ross' counsel stated that the intended word was "tortiously" and that use of the word "fortuitously" was a slip of the tongue.

**8.** See Footnote 3.

**9.** Although *Turner* is a pre-BAFJA decision, it retains its precedential value as BAFJA resulted in the statutory section on which it is based, 28 U.S.C. § 1471(b), being transferred and included in *haec verba* in 28 U.S.C. § 1334(b).

fect on the bankruptcy case as the only beneficiary of any recovery in the action would be the debtor. See also *In re Bentley (Bentley v. Sharp, et al.)*, 47 B.R. 266 (Bankr.S.D.N.Y.1985). Subsequent to *In re Turner*, the Second Circuit in *In re Lafayette Radio Electronics Corp. (Wards Company, Inc. v. Jonnet Development Corporation)*, 761 F.2d 84 (2d Cir.1985), found the bankruptcy court had jurisdiction over an action to which the debtor was not a party because the action centered on an order of the bankruptcy court.

> "Ancillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity * * *." 761 F.2d at 93.

In *Lafayette*, the Second Circuit characterized the action as one to enforce an order of the bankruptcy court rather than a run-of-the-mill breach of contract action. Here, the Damages Action is the converse, an action to *prevent* enforcement of an order of the bankruptcy court, and not a run-of-the-mill tort action and therefore this court has jurisdiction over the action, even though the Debtor is technically not a party to it.[10]

Having determined that there is jurisdiction in the bankruptcy court over the Damages Action, the court must still consider whether to abstain with respect to the Damages Action or to remand it to the state court. The Plaintiffs urge that 28 U.S.C. § 1334(c)(2) requires abstention. This court finds that section is not applicable and thus does not mandate abstention. This court finds that 28 U.S.C. § 1452(b) is the only applicable provision. Section 1452(b) states that the court to which an action is removed may remand the action "on any equitable ground" and provides that a decision to remand or not remand is not reviewable by appeal or otherwise. Section 1452 had an almost identical twin predecessor in 28 U.S.C. § 1478 (repealed 1984). The only differences between old § 1478 and new § 1452 are in the description of the court to which the action was to be removed (the bankruptcy court under § 1478 and the district court under § 1452) and the insertion at the end of § 1452(a) of a reference to § 1334. Section 1334(c)(2) provides that the court shall on timely motion abstain in a proceedings based upon a state law claim or cause of action, if an action is commenced and can be timely adjudicated in a state forum of appropriate jurisdiction. Had Congress wanted the court to look to 28 U.S.C. § 1334(c)(1) or (2) in determining whether a removed action should be remanded to the court from which it came Congress would have so stat-

---

**10.** This court has concluded that this Damages Action is one "arising from" the Ross Involuntary. If a matter is a core proceeding, i.e., "arising from," the bankruptcy court may enter a dispositive order. 28 U.S.C. § 157(b)(1). If the proceeding is not a core proceeding, but is "related to", the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Thus, the relevance of the distinction in this case is the standard of review the district court would apply; and the district court remains free to determine which standard to apply. This court is of the view that this adversary proceeding should be viewed as a core proceeding, despite the apparent anomaly of a core proceeding in which the debtor is not formally a party, because core proceedings include, *inter alia,* "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), "orders to turn over property, including the use of cash collateral," 28 U.S.C. § 157(b)(2)(M) and "other proceedings affecting the liquidation of the assets of the estate," 28 U.S.C. § 157(b)(2)(O). This court's view that the Damages Action is a core proceeding seems to be bolstered by the Second Circuit's just issued decision in *In re Johns-Manville Corporation (Manville Corporation v. The Equity Security Holders Committee, et al.),* 801 F.2d 60 (1986). ("An action brought to restrain interference resulting from proceedings in conflict with reorganization clearly may by its nature be core, however, since it will likely affect the administration of the estate." Slip Opinion at 64). However at least one court has interpreted the Second Circuit's decision in *Lafayette* as holding that an enforcement action was a "related to" matter, not an "arising from" one. See *In re Liberty Music & Video, Inc. (Free-Tan Corp. v. 49–50 Associates),* 50 B.R. 379, 385 (D.C. S.D.N.Y.1985). The Damages Adversary is plainly an attempt to interfere with the orderly administration of the Ross Involuntary by causing the Defendants to decide not to attempt to enforce the Settlement Stipulation and thereby to allow Ross and the Corporations to ignore or avoid the terms of an order of this court with impunity.

ed in 28 U.S.C. § 1452(b). An express reference to § 1334 was added in § 1452(a), yet none was added to § 1452(b). Therefore, the considerations for remand of the Damages Action are "any equitable ground." See this court's decision in *In re 666 Associates*, 57 B.R. 8 (Bankr.S.D.N.Y. 1985).

▮▮▮ No equitable ground for remand has been shown. Even if this court should find the need to respect state law and comity to be an equitable ground, this court would find that state law and comity did not require remand since the Damages Action would not exist but for the Ross Involuntary, which implicates the Bankruptcy Code. Likewise, this court finds no basis for abstaining with respect to the Damages Action.

The motion to remand or abstain with respect to the Damages Action is therefore denied.

### Motion For Summary Judgment

The court now turns to the Defendants' motion for summary judgment, which the Defendants assert should be granted because of the court's decision of February 25, 1985 on the motion to vacate the Settlement Stipulation.

> "Given the voluntariness and business prudence of the execution of the stipulation by Ross, the plaintiffs cannot prove, as their complaint contends, that Ross was coerced into breaching his fiduciary duty by entering into the stipulation on the behalf of the corporations." Bernstein Affidavit at ¶ 20.

By virtue of Bankruptcy Rule 7056, Fed. R.Civ.Pro. 56 applies in adversary proceedings. Rule 56(b) provides that a defendant may, at any time, move for summary judgment in its favor with or without supporting affidavits. Prior to the day of the hearing on the motion the adverse party may serve opposing affidavits. See Rule

56(c). If a summary judgment motion is made and supported as provided in Rule 56

> "an adversary party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.Pro. 56(e).

Supporting and opposing affidavits are to be made on personal knowledge, to set forth facts admissible in evidence and show affirmatively that the affiant is competent to testify to the matters stated. The Defendants' motion for summary judgment is supported by an affidavit on personal knowledge by the Defendants' attorney.[11] The Plaintiffs have submitted *no* opposing affidavits, choosing to rest upon the mere allegations in the verified complaint.

When a motion for summary judgment is made,

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatives, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c).

See *In the Matter of Iota Industries, Inc.*, 35 B.R. 693, 695 (Bankr.S.D.N.Y.1983); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980); and *Grand Union Co. v. Cord Meyer Development Corp.*, 735 F.2d 714, 717 (2d Cir. 1984).

It is the burden of the party who seeks the grant for summary judgment to demonstrate "the absence of any material factual issue genuinely in dispute." *In re Tampa Chain Company, Inc.*, 35 B.R. 568, 573 (Bankr.S.D.N.Y.1983). *See also United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982); *Quinn v. Syra-*

---

**11.** The matters contained in the Bernstein Affidavit respect the events in the Bankruptcy Court relative to the involuntary petition. Mr. Bernstein is a competent witness within the meaning of Rule 602 of the Federal Rules of Evidence as to these matters. An attorney may testify as to a matter of formality. See DR–5–102 of the Code of Professional Responsibility.

cuse *Model Neighborhood Corp., supra.* In determining whether to grant a summary judgment motion the court "must resolve all doubts in favor of the party opposing the motion." *In the Matter of Iota Industries, Inc.,* 35 B.R. at 695 (Bankr.S.D. N.Y.1983). *See also Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). All inferences to be drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. den.* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754. The court's function with respect to the motion for summary judgment is not to try issues of fact but to determine "whether there are issues to be tried." *Schering Corp. v. Home Insurance Company,* 712 F.2d 4, 9 (2d Cir.1983) *quoting Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). See also *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984); *In the Matter of Iota Industries, Inc., supra.*

As already stated, the Plaintiffs have submitted no affidavits in opposition to the motion for summary judgment. Nor have the Plaintiffs responded to the motion by setting forth why they are unable to submit such affidavits. Certainly as to matters within the knowledge of the Plaintiffs and supportive of the causes of action set forth in the complaint no acceptable excuse for failure to file affidavits could exist. The failure to file such affidavits cannot be excused even though the motion for summary judgment was made before discovery commenced. Under the Federal Rules a motion for summary judgment may be made by a defendant *at any time.* The plaintiff's remedy, if it believes the motion to be premature, is to utilize the procedures found in Rule 56(f) which require the plaintiff to present by affidavit the reasons why it is unable to present facts essential to its opposition. See and compare *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Even though this court finds that there are no material facts in dispute as the facts set forth by the Defendants' in support of their motion for summary judgment are unopposed, the court must still determine whether the Defendants are entitled to judgment in their favor as a matter of law. This court may enter judgment for the moving party, here the Defendants, only if it is so satisfied. See Fed.R.Civ.Pro. 56(c) ("The judgment sought shall be rendered forthwith if * * * the moving party is entitled to judgment as a matter of law.") and (e) (" * * * summary judgment, if appropriate, shall be entered against him."). See also *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir.1978). The record must be adequate to support the judgment and entry of judgment in favor of the movant is not automatic. In complex cases or ones in which a substantial public interest is involved, the court may decline to enter judgment even if the summary judgment motion is not convincingly opposed if the court determines that the legal issues should be determined only on a more complete record. See Wright, Miller & Kane, Federal Practice and Procedure (1983), § 2728.

The present case is not a complex one. The Plaintiffs are not pro se litigants. Mere allegations as to mega-buck damages do not create a complex case. Nor is a substantial public interest involved in the case. The Plaintiffs are business enterprises represented by well-known and presumptively competent counsel. Likewise, the record is adequate. Although the original Settlement Stipulation litigation was conducted before another bankruptcy judge, this court itself considered and decided the motions to vacate and enforce the Settlement Stipulation. In addition, this court has handled relevant litigation in the Ross Involuntary and General American

Communications Corporation bankruptcy cases.

On a motion to dismiss for failure to state a claim for relief under Fed.R.Civ. Pro. 12(b)(6), the court must indulge every presumption in the plaintiff's favor and deny the motion if any legal theory exists to sustain the complaint. However, no such indulgence of the plaintiff is required after an answer has been filed and a motion for summary judgment made. Then, it becomes the burden of the plaintiff to come forward and defend the legal merits of the complaint and it is not the duty of the court to engage in guessing games about the legal justification for the complaint. The plaintiff must come forward and supply the legal basis for the complaint. See Fed.R. Civ.Pro. 56(c). See also Fed.R.Civ.Pro. 11 ("The signature of an attorney * * * constitutes a certificate by him * * * that to the best of his knowledge, information, and belief formed after reasonable inquiry it [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law * * *").

The Plaintiffs have totally failed to offer any legal justification for the sketchy and conclusory claims found in the complaint. The only defense offered to the motion for summary judgment is that this court's ruling on the motion to vacate the Settlement Stipulation has no res judicata or collateral estoppel effect on this action. This argument misses the mark.

Two ideas are fundamental to all of the causes of action asserted in the complaint: first, that Ross' agreement to the Settlement Stipulation on behalf of the Corporations breached his fiduciary duties to those Corporations; and second, that the Defendants acted without excuse or justification. As a matter of law on the record before this court, Ross did not breach his fiduciary duties to the Corporations.

The New York Business Corporation Law in Section 715(h) states:

"as to matters which the officer believes to be within such person's professional or expert competence, so long as in so relying he shall be acting in good faith and with such degree of care, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. *A person who so performs his duties shall have no liability by reason of being or having been an officer of the Corporation.*" (Emphasis added).

As to directors, Section 717 of the New York Business Corporation Law provides:

"A director shall perform his duties as a director * * * in good faith and with that degree of care which an ordinary prudent person in a like position would use under similar circumstances."

See *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979) and *Parkoff v. General Telephone & Electronics Corp.,* 53 N.Y.2d 412, 442 N.Y.S.2d 432, 425 N.E.2d 820 (1981).

Ross was represented by counsel at the time he agreed to the Settlement Stipulation and agreed to it only after initially opposing the Motion. In agreeing to the Settlement Stipulation, Ross must be presumed to have relied on the advice of counsel. A review of the terms of the Settlement Stipulation against the relief which could have been granted on the Motion [12] makes it self-evident without resort to collateral estoppel or res judicata that the terms were less onerous to the Corporations than the possible litigation outcome. No interim trustee was appointed and Ross remained in control of the management of the Corporations. Although the Settlement Stipulation permits requests to the court to allow transactions outside of those permitted, no such request has ever been made to the bankruptcy court. If one assumes, as one must, that Ross' continued management role as opposed to that of an interim trustee was viewed by Ross and the Corporations as in the best interests of the Corporations, then Ross acted with reasonable

12. See Footnote 3.

business judgment. He acted as an ordinarily prudent person in a like position and under similar circumstances would have done by agreeing to the Settlement Stipulation on behalf of the Corporations and thereby preserving his continued management role and avoiding appointment of an interim trustee. Therefore, Ross did not breach his fiduciary duties to the Corporations.[13]

The other essential element of the causes of action found in the complaint, that the Defendants acted without excuse or justification, also cannot be established as a matter of law. The Defendants had been attempting unsuccessfully to collect debts from Ross. One of the Defendants, Rosenman, held a substantial judgment in its favor against Ross which had been outstanding for a year and a half and on which execution had been returned unsatisfied, except for a trivial amount. R & W and WLW had obtained an order of attachment in their favor against Ross on which they had also been unable to find any property of his on which they could successfully levy.[14] Merrill had a written guaranty from Ross. None of the Defendants are competitors of Ross in any ordinary usage

of that concept. It is clear that involuntary bankruptcy is a recognized form of debt collection remedy. Therefore the court finds the lawful use of the involuntary bankruptcy process by the Defendants, including the provisions for appointment of an interim trustee, were not without excuse or justification and any adverse effects on the Plaintiffs were merely incidental.

The complaint fails to set forth a claim for relief. There was no breach of fiduciary duty. See discussion *infra*. It has been held that

> "there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act or, in Justice Holmes' characteristically colorful language, unless defendant acts from 'disinterested malevolence' * * * by which is meant 'that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another * * *.'" *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983).

See also, *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 398 N.Y.S.2d 864, 368

---

**13.** This discussion has focused on the Settlement Stipulation as a voluntary, contractual act of Ross. However, it must also be borne in mind that the Settlement Stipulation is a court order in the form of a consent decree. Consent decrees have attributes both of contracts and of judicial decrees and they can be labeled both contracts and judgments.

> "[C]onsent decrees bear some of the earmarks of judgments entered after litigation. At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts. * * *

> "[T]he voluntary nature of a consent decree is its most fundamental characteristic. * * *

> " * * * Naturally, the agreement reached [and incorporated in the consent decree] normally embodies compromise, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. * * * "

> " * * * To be sure, a federal court is more than a 'recorder of contracts' from whom parties can purchase injunctions, it is 'an organ of government constituted to make judicial decisions....' * * * Accordingly, a con-

sent decree must spring from and serve to resolve a dispute within the court's subject matter jurisdiction. Furthermore, consistent with this requirement, the consent decree must 'com[e] within the general scope of the case made by the pleadings,' * * * and must further the objectives of the law upon which the complaint was based * * *. However, in addition to the law which forms the basis of the claim, the parties' consent animates the legal force of a consent decree." *Local Number 93, International Association of Firefighters, AFL–CIO, C.L.C. v. City of Cleveland, et al.,* —— U.S. ——, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986).

The judicial attributes of the Settlement Stipulation only enhance the argument that as a matter of law Ross did not violate his fiduciary duties to the Corporation.

**14.** As discussed in this court's decision in *In re General American Communications Corporation*, see footnote 1, this court disagrees with the state court's preliminary analysis of the usury defense raised by Ross and General American. However, at the time the Settlement Stipulation was entered into the state court ruling on the attachment was binding and the law of the case.

N.E.2d 1230 (1977); and *Demalco Ltd. v. Feltner*, 588 F.Supp. 1277 (S.D.N.Y.1984).[15] In order to find a cause of action for intentional and malicious interference with existing or prospective business relations on these facts, this court would have to extend New York law unduly. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980); *A.S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957). Mere creative pleading is insufficient to survive a motion for summary judgment.

This court has determined that the Defendants are entitled to judgment in their favor as a matter of law and the motion for summary judgment is therefore granted.

It is so ordered.

---

15. Because this court finds that the complaint in the Damages Action fails even on its own terms, this court need not consider whether the complaint must fail because it is an attempt to preclude enforcement of an order of this court that this court has found to be valid and enforceable.