Clayton **NEUMAN**, Andy **Briant**, and Alan **Kadat**, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Arthur G. **GOLDBERG**, et al., Defendants.

No. 93 Civ. 2092 (RWS).

United States District Court, S.D. New York.

Sept. 30, 1993.

---

Beigel & Sandler, Ltd., New York City (Herbert Beigel, of counsel), for plaintiffs.

Anderson Kill Olick & Oshinsky, P.C., New York City (Robert H. Pees, Stephen M. Baldini, Steven M. Pesner, of counsel), Camhy Karlinsky & Stein, New York City (Mark H. Budoff, Kenneth A. Lapatine, of counsel), Pryor Cashman Sherman & Flynn, New York City (James Janowitz, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Clayton Neuman, Andy Briant, and Alan Kadat, individually and on behalf of all other persons similarly situated, members of a putative class, (the "Plaintiffs") have moved to remand this action against Arthur Goldberg *et al* (the "Defendants") to the Supreme Court of the State of New York. For the reasons set forth below, the motion is denied.

### The Parties

The Plaintiffs purchased securities through investments generally of between $150,000 and $170,000 per unit in the form of cash and promissory notes in approximately 150 privately offered limited partnerships that acquired for cash and mortgage notes one or more commercial real estate properties which were net leased to (or the rental payments of which were guaranteed by), in most transactions, a single lessee or entity (the "Net Lease Partnerships"), and which included in the purchase price a deferred purchase obligation (the "Contract Rights"). These Net Lease Partnerships were sponsored by Integrated Resources, Inc. ("Integrated"), and sold to Plaintiffs between 1979 and 1985. Over 2,500 purchasers are alleged to be similarly situated.

The Defendants are the general partners of the Net Lease Partnerships, and the Net Lease Partnerships themselves and include entities that served in the identical capacities as the other Defendant entities listed above in connection with the other Net Lease Partnerships, as partnerships or corporations wholly-owned and controlled by various present and former officers and directors of Integrated Resources, including the individual Defendants, that act as the general partners of the Net Lease Partnerships and, in turn, the general partners of such general partners.

Although not a party as a consequence of its filing for bankruptcy in February 1990, Integrated and its activities are the generating force in the miasma of litigation which followed its downfall.

It is alleged that by year-end of 1985, when Integrated ceased sponsoring such Net Lease Partnerships, it had syndicated Net Lease Partnerships with approximately $5 billion (on a cost basis) of property in which Integrated would purchase a property from an unaffiliated seller for cash and mortgage notes through one of its subsidiaries, lease the property under a net lease to another Integrated subsidiary which would then lease the property back to the seller (or one of its affiliates), a separate Integrated subsidiary would guarantee the leasing subsidiaries' obligations under the Master Lease, and the Integrated subsidiaries would sell the properties and assign the ground leases to the Net Lease Partnerships and take back the deferred purchase obligation, *i.e.,* the contract rights.

### Prior Proceedings

Predictably, the affairs of Integrated resulted in litigation throughout the country and thus gained the attention of the Multidistrict Panel which in October 1991, referred actions concerning Integrated to this court, a process which remains ongoing with 47 actions currently pending. In the course of this multidistrict litigation ("MDL") two "Global" opinions were filed, familiarity with which is assumed. *See In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620 (S.D.N.Y.1993). These opinions dealt with statute of limitations and securities act issues and there are presently pending *sub judice* motions seeking the dismissal of certain claims based upon alleged violations of the Racketeer Influenced And Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Included among these

MDL designed actions is *Neuman, et al. v. Integrated Equity Corporation, et al.*, 92 Civ. 0023 (RWS) (*"Neuman I"*) which has as its subject the Net Lease Partnerships alleged to give rise to the rights set forth in the complaint here. There are presently pending in *Neuman I* Global Motions directed to both its securities and RICO claims. In thirteen of the MDL actions in which Global Motions I and II have been decided, the plaintiffs have withdrawn their federal claims by stipulation and the parties have consented to the retention by this court of the pendent state claims.

A petition for reorganization of Integrated has been pending in the United States Bankruptcy Court for the Southern District of New York since February 1990 and in the spring of 1993 certain reorganization plans were proposed which involved the sale and financing of the Contract Rights as set forth in the disclosure statement for the Debtor's First Amended and Restated Plan of Reorganization of January 19, 1993 ("Disclosure Statement"). It was proposed in the Disclosure Statement that creditors of Integrated be paid in part by the issuance of a $250 million note funded through the financing or sale of the Contract Rights.

On March 10, 1993 the Plaintiffs filed a class action summons and complaint in this action in the Supreme Court of the State of New York which was the subject of a notice of removal to this court on March 31 and treated as a related case to the MDL actions. The parties and counsel for the parties in the instant action (*"Neuman II"*) are identical to those in *Neuman I.*

The complaint alleges causes of action under state law for breaches of fiduciary duty by the Defendants as general partners of the limited partnership, the Plaintiffs alleging that Integrated cannot sell or finance the Contract Rights in their present form and must obtain the Limited Partnership's consents to any reissuance in a marketable form. Plaintiffs allege that in exchange for the consents, Integrated agreed to discount the Contract Rights and at the same time, that the Defendants negotiated with Integrated for indemnification against claims made against them by limited partners in unrelated partnerships. Plaintiffs also allege that since the real property represented by the Contract Rights represents virtually all the assets of the Defendants, the proposed modification has the same effect as the sale of property which requires a two-thirds vote of the limited partners under the partnership agreements.

The Plaintiffs' complaint requests an injunction to enjoin the Defendants from modifying the Contract Rights, to stay any reorganization pending a two-thirds vote of the limited partners, and a declaratory judgment that any modification of the Contract Rights in violation of the general partners' duty be deemed void.

The Plaintiffs moved to remand this action on April 13, 1993 on the grounds that this Court lacks jurisdiction under 28 U.S.C. § 1334(b), or, alternatively, is required to abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c)(2); or should abstain from exercising jurisdiction in the interests of justice pursuant to 28 U.S.C. § 1334(c)(1), and should remand the case on equitable grounds pursuant to 28 U.S.C. § 1452(b). Their motion was heard and deemed fully submitted on June 2, 1993.

### Removal Is Appropriate Under The All Writs Act

The All–Writs Act, 28 U.S.C. § 1651(a) (the "All–Writs Act"), authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Supreme Court:

> has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.

*U.S. v. New York Telephone Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977) (*citing Harris v. Nelson*, 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d

281 (1969)); *Price v. Johnston*, 334 U.S. 266, 282, 68 S.Ct. 1049, 1058, 92 L.Ed. 1356 (1948); *Adams v. United States*, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942). The Defendants have also cited *Pennsylvania, Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985), but *Pennsylvania Bureau* is somewhat out of context when the full sentence containing the cited proposition is read. The All–Writs Act gives federal courts sweeping authority to preserve their jurisdiction over complex, ongoing litigation which is a mild characterization of the situation here presented.

■ By enjoining[1] related actions in state courts, federal courts can "prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 335 (2d Cir.1985) (*quoting Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970)).

In the Multi–District Litigation context, the Second Circuit has recently reaffirmed the suitability of a district court's use of the All–Writs Act as authority for removal as:

it was enforcing an explicit, ongoing order against relitigation of matters it already had decided, and guarding the integrity of its rulings in complex multidistrict litigation over which it had retained jurisdiction.

*In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1431 (2d Cir.1993). In yet another multidistrict class action, the district court in *Ryan v. Dow Chem. Co.*, 781 F.Supp. 902 (E.D.N.Y. 1991), one of many precursors to *In re Agent Orange Product*

*Liability Litigation, supra,* relied on the All–Writs Act to deny plaintiffs' motion for remand of an action commenced in state court and voluntarily removed it to federal court. In denying plaintiffs' motion to remand, the district court held that "the new suits are a direct threat to the continuing viability of the judgment settling the class action." *Id.* at 918. The court concluded "[i]f the case had remained in state court, the court would have had the authority to order its removal ... Taking jurisdiction of the cases after their voluntary removal is a 'less drastic, and therefore preferable result.'" *Id.* (citations omitted).

■ In addition, the All–Writs Act permits a federal court to "remove state court actions to federal court in situations where specific statutory removal authority is absent." *Ryan v. Dow Chem. Co.*, 781 F.Supp. at 918. For example, in *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855 (2d Cir.1988), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989), this Court relied on the All–Writs Act to remove an Article 78 proceeding from state to federal court. In affirming the district court's removal of the state court actions under the All–Writs Act, the Second Circuit concluded that "removal was necessary to protect the integrity of the Consent Decree and because the issues raised by the Article 78 petitions cannot be separated from the relief provided by the Consent Decree." *Id.* at 865. *See also United States v. City of New York*, 972 F.2d 464, 469 (2d Cir.1992) (affirming removal of state court action under All–Writs Act).

■ The *Neuman II* action not only relates to the pending federal bankruptcy as discussed below, but also threatens to disrupt the orderly resolution of the consolidated multidistrict litigation before this Court. The putative plaintiff class in *Neu-*

1. Courts frequently use their injunctive powers to maintain control over ongoing federal litigation. *See e.g. NLRB v. A.N. Electric Corp.*, 1992 WL 465776, 1992 U.S.App. LEXIS 37577 (2d Cir. July 15, 1992); *In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328 (2d Cir.1985); *Pinto v. Doskocil*, 1992 WL 111344, 1992 U.S.Dist. LEXIS 6363 (S.D.N.Y. May 8, 1992); *United States v. Int'l Brotherhood of Teamsters*, 728 F.Supp. 1032 (S.D.N.Y.1990), *aff'd* 907 F.2d 277 (2d Cir.1990); *Bruce v. Martin*, 680 F.Supp. 616, 622 (S.D.N.Y. 1988).

*man II* is the same as the putative plaintiff class in *Neuman I*. The allegations in the two actions do not merely overlap but, in many instances, are verbatim. Certainly given the Integrated bankruptcy proceedings, any relief to be granted in *Neuman I* would impact directly upon the relief sought in *Neuman II*. Given the situation, the proper course is that initially proposed by Plaintiffs, the amendment of the state claims in *Neuman I*.

A declaration or denial of the fiduciary rights sought in *Neuman II* could materially affect not only the bankruptcy proceeding but the validity and interpretation of the Contract Rights which lie at the heart of *Neuman I*. The very real possibility of inconsistent and conflicting declarations thus exist. Finally, competitive litigation will severely handicap this Court's ability to manage *Neuman I* effectively.

The concerns over escalating costs, a loss of flexibility, and inconsistent results persuaded the *Baldwin* Court to enjoin states from bringing suit on behalf of their citizens. *See In re Baldwin–United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 336 (2d Cir.1985). While the same concerns are present here, the Removing Defendants ask for a "less drastic, and therefore preferable" remedy: that this Court retain jurisdiction over a case that has already been voluntarily removed. *See Ryan*, 781 F.Supp. at 918.

At the center of the issues presented in *Neuman II*, are the indemnification rights, if any, of the individual Defendants. The *Neuman II* Amended Complaint states that:

> the general partners have a conflict of interest which prevents them from fulfilling their fiduciary duty to the limited partners, in that the general partners, are also currently negotiating with Integrated to be indemnified by Integrated for all claims made against them arising out of litigation filed by limited partners

in unrelated partnerships in which defendants are general partners.

Amended Complaint ¶ 22. The Defendants, however, note that the offering memoranda explicitly describe in a section entitled "Conflicts of Interest" the general partners' indemnification rights.

Indeed, the Amended Complaint in *Neuman II* repeats the *Neuman I* Amended Complaint's warning of possible "inconsistent adjudications":

> This action should be maintained as a class action because prosecution of separate lawsuits by individual members of the class would create the risk of inconsistent adjudications with respect of individual class members which would establish incompatible standards of conduct for defendants.

*Neuman I* Amended Complaint at ¶ 13; *Neuman II* Amended Complaint at ¶ 8. *Neuman II*, if remanded, could threaten the orderly resolution of the consolidated pretrial proceedings ordered by the Judicial Panel on Multidistrict Litigation and jurisdiction therefore is appropriate under the All–Writs Act.

### *There Is "Related Action" Jurisdiction*

Section 1334 of Title 28 provides that federal district courts shall have jurisdiction over all civil proceedings "related to" actions under Title 11 of the Bankruptcy Code.[2] The standard for relatedness has been set forth in *Weisman v. Southeast Hotel Properties Ltd. Partnership*, 1992 WL 131080 1992 U.S.Dist. LEXIS 7736 at *7 (S.D.N.Y. June 1, 1992) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984):

> [A] civil proceeding is related to bankruptcy [if] ... the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action

**2.** Section 1334(b) states:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
28 U.S.C. § 1334(b).

is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

See also *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir.1992); *In re Holland Industries, Inc.*, 103 B.R. 461, 468 (Bankr.S.D.N.Y.1989); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

In *In re Turner*, 724 F.2d 338 (2d Cir. 1983), the Second Circuit dismissed a debtor's cause of action against her landlord because there was no showing that the debtor's action had any "significant connection" to the bankruptcy. *Id.* at 341. Although "nowhere in *Turner* did the Second Circuit hold that 'related to' meant 'significant connection with,' "[3] some courts have interpreted the "significant connection" language as establishing a narrower standard than the one originally set forth in *Pacor.* However, because the state action in *Turner* had no possible relation to the bankruptcy proceeding, "the outcome in *Turner* would remain unchanged whether the court intended the 'significant connection' language to be interpreted as expansively as the *Pacor* standard, or more narrowly." *Weisman* at *9. Thus, the *Turner* court did not create a new standard of relatedness, but merely held that under the facts of that case, there was no connection between the state action and the bankruptcy action.

■ In *Cuyahoga*, the Second Circuit clarified the test of relatedness in light of the holding in *Turner:*

> the test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome would have any "conceivable effect" on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court.

980 F.2d at 114. Thus, the Second Circuit held that a showing that the state court action has either "any significant connection" or "any conceivable effect" on the bankruptcy proceeding will establish jurisdiction under Section 1334(b). *Id.* (*citing Pacor,* 743 F.2d at 994 and *Turner,* 724 F.2d at 341).

■ Under either a "conceivable effect" standard or under a "significant connection" standard, *Neuman II* is "related to" Integrated's bankruptcy. "Integrated cannot fund its proposed plan of reorganization unless it obtains the consent of the partnerships to a modification of the contract rights ..." Amended Complaint *Neuman II* at ¶ 28. The relief sought in *Neuman II* directly affects, and undoubtedly results from, the Debtor's plan of reorganization and it is thereby "related to" the bankruptcy proceeding.

By seeking a declaration related to the Contract Rights, *Neuman II* imparts a crucial ingredient in a potential plan of reorganization of the Debtor and is thereby "related to" Integrated's bankruptcy.

### Abstention Is Not Required

Nor is this Court required to abstain from exercising jurisdiction over *Neuman II* or remand the action pursuant to § 1334(c)(2) which provides as follows:

> Upon timely motion of a party in a proceeding based upon a state law claim or state law cause of action, related to a case under Title 11 but not arising under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

■ Other holdings in this District have determined that the statutory scheme of § 1334 precludes the application of the mandatory abstention provision in § 1334(c)(2) to removed actions absent a

---

**3.** *Widewaters Roseland Center Co. v. TJX Cos.,*   135 B.R. 204, 206 n. 4 (N.D.N.Y.1991).

parallel state case. *Weisman* at 13; *In re 666 Associates,* 57 B.R. 8, 12 (Bankr. S.D.N.Y.1985); *Kolinsky v. Russ,* 100 B.R. 695, 704 (Bankr.S.D.N.Y.1989) ("The prerequisite for mandatory abstention ... is a pending state court case"); *In re Ross,* 64 B.R. 829, 834 (Bankr.S.D.N.Y.1986); *see also In re Princess Louise Corp.,* 77 B.R. 766, 771 (Bankr.C.D.Cal.1987); *In re Micro Mart, Inc.,* 72 B.R. 63, 64 (Bankr.N.D.Ga. 1987).[4]

■ Mandatory abstention pursuant to Section 1334(c)(2) is appropriate only in instances "where an action could not have been commenced in a court of the United States absent jurisdiction under this section." 28 U.S.C. § 1334(c)(2). As has been set forth, this Court has jurisdiction over *Neuman II.*

■ Mandatory abstention is also inappropriate in instances where an action cannot be "timely adjudicated" in the state forum. 28 U.S.C. § 1334(c)(2). Plaintiffs argue that the *Neuman II* action can be quickly adjudicated in New York state court. Given the prior proceedings recounted above, there has not been, and could not be, a showing that a resolution could be "timely" in the state courts. The Plaintiffs' counsel have so indicated in other actions involving Integrated-sponsored limited partnerships litigations. Moreover, Integrated's bankruptcy proceedings are well advanced and *Neuman II* is at the starting line. Even the most efficient court system could not reach the finish line in a timely fashion that would avoid interference with the federal interests at stake.

■ Equitable abstention pursuant to 28 U.S.C. § 1334(c)(1)[5] or remand on equitable grounds based on 28 U.S.C. § 1452(b)[6] are not warranted. The fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex and here where in certain of the MDL cases pendent state court claims also have supported jurisdiction. In *Weisman* this court declined to abstain on equitable grounds from exercising jurisdiction over a complaint that was based solely on state law, holding:

> [B]ecause no parallel action is pending in state court, there is no danger of inconsistent judgments or friction between state and federal courts. Nor does the action present novel or complex state law issues or a potential conflict between state law and federal constitutional law. Thus, there is no reason to abstain in favor of the state court.

*Id.* at \*15 *(referring to Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). *See also 666 Associates,* 57 B.R. at 11 ("All of the indicia, other than respect for Plaintiffs' choice of forum, favor ... retention of the State Court Action ...").

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405 (S.D.N.Y. 1991), cited by Plaintiffs is not to the contrary. In *Drexel,* creditors brought several securities actions against Drexel, the debt-

---

**4.** *But see Channel Bell Associates v. W.R. Grace & Co.,* 91 Civ. 5485 (PKL), 1992 WL 232085, 1992 U.S.Dist. LEXIS 13014 (S.D.N.Y. Aug. 31, 1992). In *Channel Bell,* the court held mandatory abstention, or at least discretionary abstention, was appropriate. Contrary to the case at bar, the *Channel Bell* plaintiff seeking to remain in state court was the debtor and defendant's sole jurisdictional basis for removal was under § 1334. Accordingly, the *Channel Bell* court found that plaintiffs had filed for mandatory abstention in a timely fashion, that the plaintiffs had commenced their action in state court, and that "nothing in the record suggests this action could not be timely litigated in ... state court" *Id.* at \*23 *(quoting In re Titan Energy Inc.,* 837 F.2d 325, 333 (8th Cir.1988)), especially since

the case concerns an "uncomplicated action for past due rent payments." *Id.*

**5.** Section 1334(c)(1) provides, in pertinent part:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.

**6.** Section 1452(b) provides, in pertinent part:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

or in a Chapter 11 proceeding. The debtor brought state law claims against its insurers seeking a declaration that it was not required to prove its loss or sue in order to preserve its rights to indemnification for losses suffered in connection with the securities actions. The Court held that because the state action had nothing to do with issues raised in the federal proceeding and that the state action involved "difficult issues of state law," remand was warranted. *Id.* at 408–09. Here, to the contrary, *Neuman II* directly targets the Integrated plan of reorganization and raises no difficult issues of state law.

Indeed, equitable considerations militate in favor of having the twin actions, *Neuman I* and *Neuman II,* in one court.

### Conclusion

The motion of the Plaintiffs to remand the action to the state court is denied.

The action will be included as part of the MDL litigation and subject to any further orders in those proceedings.

It is so ordered.