**RENAISSANCE COSMETICS, INC., et al., Plaintiffs,**

v.

**DEVELOPMENT SPECIALISTS INC., et al., Defendants.**

**No. 01 CIV. 9331(SAS).**

United States District Court, S.D. New York.

Jan. 14, 2002.

■

---

**5.** An examination of these guidelines reveals nothing relevant to the issue before the court.

Steven R. Schindler, Schindler, Cohen & Hochman, LLP, New York City, for Plaintiffs.

Pamela Jarvis, Gregory P. Joseph Law Offices LLC, New York City, for Development Specialists, Inc. and William Brandt.

Scott A. Edelman, Milbank, Tweed, Hadley & McCloy, LLP, New York City, Michael H. Diamond, Milbank, Tweed, Hadley & McCloy, LLP, Los Angeles, CA, for Oaktree Capital Management, OCM Principal Opportunities Fund, L.P., Pacholder Heron, L.P.

Steven J. Cohen, Wachtel & Masyr LLP, New York City, for Chanin Capital Partners.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiffs Renaissance Cosmetics, Inc., et al., (collectively "RCI") filed for chapter 11 bankruptcy in Delaware Bankruptcy Court (the "Bankruptcy Proceeding") and subsequently filed this action against defendants in New York State Court (the "Action"). Defendants removed the Action to this Court based on federal bankruptcy jurisdiction and RCI now seeks remand. Defendants cross-move for change of venue to the Delaware District Court in contemplation of referral to the Delaware Bankruptcy Court. For the reasons below, RCI's motion is denied and defendants' cross-motion is granted.

## I. BACKGROUND

Prior to filing for bankruptcy, RCI was a manufacturer and marketer of mass market cosmetics and related products. *See* Complaint ("Compl.") ¶ 38. RCI is a holding company incorporated in Delaware that conducts its principal business operations through its operating subsidies, which are also named as plaintiffs in this Action.[1] *See id.* ¶ 17. Defendants include: Development Specialists, Inc. ("DSI"), a Delaware corporation that provides consulting services regarding reorganization, bankruptcy, and turnaround management; William Brandt ("Brandt"), the principal owner of DSI; Chanin Capital Partners ("Chanin"), a Delaware corporation primarily engaged in investment banking; and nine corporations and partnerships that are primarily engaged in the evaluation, acquisition and management of securities (collectively, the "Bondholders"). *See id.* ¶¶ 26–37. The facts alleged in the Complaint follow.

In February 1997, RCI issued a number of 11–3/4% Senior Notes (the "Notes"). *See id.* ¶ 43. The Bondholders began purchasing the Notes in 1998 and soon became the majority holders of the Notes. *See id.* ¶¶ 6, 66. In 1998, RCI was in financial difficulties and was facing potential default on the Notes. *See id.* ¶ 57. The company decided on a plan for operational and financial restructuring, including a "prepackaged" chapter 11 bankruptcy filing intended to restructure the outstanding Notes, as well as RCI's preferred and common stock. *Id.* ¶¶ 48–56. To avoid default on the Notes, RCI sought to file for bankruptcy prior to August 1988, when

---

1. All of the plaintiffs are Delaware corporations. *See* Compl. ¶¶ 17–25. The remaining plaintiffs are subsidiaries or business partners of RCI and debtors in the Bankruptcy Proceeding. *Id.*

the next payment on the Notes would become due. *See id.* ¶ 38.

RCI's management and advisors consulted with the Bondholders regarding these plans and, by Summer 1998, obtained the Bondholders' agreement to allow for the planned restructuring, including the chapter 11 filing. *See id.* ¶ 6. Having secured the Bondholders' agreement, RCI issued a press release announcing the pending bankruptcy filing. *See id.* ¶ 17. The press release was intended to shore up confidence among RCI's business partners in anticipation of the upcoming holiday season. *See id.* Shortly after the agreement with the Bondholders was reached, and just days prior to the impending August 15 payment date for the Notes, the Bondholders demanded that RCI immediately retain DSI and Brandt to serve as RCI's "crisis management team." *Id.* ¶ 8. They also demanded that RCI allow the Bondholders' professional advisors, particularly Chanin, complete access to RCI's operations. *See id.*

As part of DSI's seizing control of RCI, Brandt was given the position of CEO of RCI. *See id.* ¶ 9. Brandt then installed other DSI professionals in management positions at RCI and other RCI companies. *See id.* Non–DSI members of management were excluded from RCI's day-to-day operations and decision-making. *See id.* DSI and Brandt also terminated all of RCI's professionals, including its accountants, lawyers and financial consultants, installing new professionals with allegiance to DSI. *See id.* ¶ 73. Shortly after assuming control, Brandt and DSI reversed RCI's decision to immediately file for bankruptcy, thereby destroying RCI's restructuring plan. *See id.* ¶ 5.

According to the Complaint, DSI and Chanin collected multimillion dollar fees while DSI and Brandt mismanaged RCI. *See id.* ¶ 12. Due to this mismanagement, RCI experienced severe financial problems and was ultimately forced into bankruptcy. *See id.* On June 2, 1999, RCI filed the Bankruptcy Proceeding in the Delaware Bankruptcy Court. *See In re Renaissance Cosmetics, Inc. et al.,* No. 99–2136(MFW), jointly administered with 99–2137 through 99–2144. The Bondholders filed proofs of claim against RCI's estate seeking payment on the Notes. *See* 11/23/01 Letter from Michael H. Diamond, counsel for the Bondholders, to this Court ("Def. 11/23/01 Ltr.") at 2–3 [2]; 12/6/01 Letter from Steven R. Schindler, counsel for RCI, to this Court ("Pl. 12/6/01 Ltr.") at 2. DSI and Brandt filed proofs of claim against RCI's estate seeking "indemnification and/or contribution for expenses (including attorneys' fees), judgments, fines and other amounts that DSI has paid or will pay, including without limitation any such payments in connection with allegations made by Houbigant ...." Proof of Claim, Ex. A to 12/26/01 Letter from Pamela Jarvis, attorney for DSI and Brandt, to this Court ("Def. 12/26/01 Ltr."), at 3. Whereas RCI's going-concern value in June 1998, when it had first contemplated restructuring, had exceeded $200 million, by June 1999 the company was forced to liquidate its assets for approximately $29 million. *See* Compl. ¶¶ 12, 90.

On June 1, 2001, RCI sued defendants in New York State Court, alleging that defendants caused it to sustain losses in excess of $200 million and seeking "to recover those losses for the benefit of their creditors." *See id.* ¶ 1. The Complaint includes claims against DSI, Brandt, and/or

---

[2]. Counsel for the Bondholders was permitted to address the Court on behalf of all defendants. *See* Def. 11/23/01 Ltr. at 1.

Chanin for breach of fiduciary duty, malpractice, breach of contract, fraud, fraudulent concealment, corporate waste and fraudulent conveyance. *See id.* ¶¶ 90–163. The allegations against the Bondholders include aiding and abetting breach of fiduciary duty, aiding and abetting fraud and fraudulent concealment, breach of fiduciary duty, and breach of duty of good faith. *See id.* ¶¶ 164–181.

The Complaint was served on defendants over the course of a few weeks, beginning on September 24, 2001. *See* Def. 11/23/01 Ltr. at 2; Notice of Removal ¶ 3. On October 24, 2001, the Bondholders and defendant Chanin removed the Action to this Court pursuant to 28 U.S.C. § 1334(b) and § 1452, which provides that a state court case related to a bankruptcy proceeding may be removed to the federal court within the same district as the pending state court action. *See* Notice of Removal ¶ 5; Def. 11/23/01 Ltr. at 2. DSI and Brandt consented to the removal. *See* Notice of Removal ¶ 2.

## II. DISCUSSION

RCI moves to remand this Action pursuant to the mandatory and discretionary abstention provisions of 28 U.S.C. §§ 1334(c)(1) and (2), as well as 28 U.S.C. § 1452(b), which permits remand on equitable grounds where the basis of removal was federal bankruptcy jurisdiction (the "Remand Motion").[3] *See* Pl. 11/23/01 Ltr. at 1. Defendants cross-move for transfer of venue pursuant to 28 U.S.C. § 1412, the general change of venue provision, or 28 U.S.C. § 1404(a), which permits transfer on convenience grounds, as well as 28 U.S.C. § 157(a), which provides for automatic referral of bankruptcy-related cases to the Bankruptcy Court (the "Venue Mo-

tion"). *See* Def. 11/23/01 Ltr. at 1; 12/21/01 Letter from Jarvis to this Court ("Def. 12/21/01 Ltr.") at 1–3.

As an initial matter, I note that the Remand and Venue Motions raise distinct yet related issues. A party seeking to consolidate a state action with a bankruptcy proceeding pending in another judicial district must first remove the state action to the district in which that state action was filed, and then move to transfer venue to the district in which the bankruptcy case is pending. *See Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc.*, No. 99 Civ. 11248, 2000 WL 890191, at *2 (S.D.N.Y. July 5, 2000) (citing 28 U.S.C. § 1452(a); *Furr v. Barnett Bank (In re S & K Air Power of Florida, Inc.)*, 166 B.R. 193, 194 (Bankr.S.D.Fla.1994); *Cambridge Co. v. Cotten (In re Trafficwatch)*, 138 B.R. 841, 843 (Bankr.E.D.Tex.1992); 10 Collier on Bankruptcy ¶ 9027.01, at 9027–5 (Lawrence P. King et al. eds., 15th ed.2000)). Therefore, courts faced with cross-motions for remand and change of venue consider the remand motion first and, if remand is denied, turn to the motion for change of venue. *See id.; Arstk Inc. v. Audre Recognition Sys., Inc.*, No. 95 Civ. 10519, 1996 WL 229883, at *6 (S.D.N.Y. May 7, 1996); *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 Civ. 0277, 1995 WL 489711, at *9–*10 (S.D.N.Y. Aug. 15, 1995). Yet, because section 1452(b) permits remand "on any equitable ground," a court's remand analysis will generally take into consideration the possibility that the case might be transferred for consolidation with a pending bankruptcy proceeding. *See Renaissance Cosmetics, Inc.*, 2000 WL 890191, at *2; *Arstk*, 1996 WL 229883, at *5–*6; *Nemsa*, 1995 WL 489711, at *8.

---

**3.** RCI does not appear to dispute this Court's jurisdiction over the Action for it explicitly states that this "is a matter 'related to' a case

under title 11." 11/23/01 Letter from Schindler to the Court ("Pl. 11/23/01 Ltr.") at 1.

## A. The Remand Motion

### 1. Mandatory Abstention

█ Under section 1334(c)(2), a district court is required to abstain from hearing a proceeding based on state law that is before the court based on federal bankruptcy jurisdiction if certain criteria are met. The party seeking mandatory abstention must show that: (1) the abstention motion was "timely" brought; (2) the action is based upon a state law claim; (3) the action is 'related to' a bankruptcy proceeding, as opposed to 'arising under' the Bankruptcy Code or 'arising in' a case under the Bankruptcy Code; (4) the sole federal jurisdiction for the action is section 1334; (5) there is an action 'commenced' in state court; and (6) the action is capable of being 'timely adjudicated' in state court. *See Channel Bell Assoc. v. W.R. Grace & Co.*, No. 91 Civ. 5485, 1992 WL 232085, at *5 (S.D.N.Y. Aug.31, 1992).

Defendants argue that, regardless of whether this case meets the above criteria, mandatory abstention has no application to a removed action where no parallel court proceeding exists by virtue of removal. *See* 12/6/01 Letter from Jarvis to this Court ("Def. 12/6/01 Ltr.") at 2 (citing *In re Lazar*, 237 F.3d 967, 981–82 (9th Cir. 2001), *cert. denied, California v. Schulman*, — U.S. ——, 122 S.Ct. 458, 151 L.Ed.2d 377 (2001); *Weisman v. Southeast Hotel Prop. Ltd. P'ship*, No. 91 Civ. 6232, 1992 WL 131080, at *5 (S.D.N.Y. June 1, 1992); *Paul v. Chemical Bank (In re 666 Assocs.)*, 57 B.R. 8, 12 (Bankr.S.D.N.Y. 1985)). There is a split among the circuits as to whether section 1334(c) applies to removed actions.[4] *Compare In re Lazar*, 237 F.3d at 981–82 (abstention not applica-

ble to removed action); *with Christo v. Padgett*, 223 F.3d 1324, 1331–32 (11th Cir. 2000) (abstention may apply to removed action); *In re Southmark Corp.*, 163 F.3d 925, 929 (5th Cir.1999)(same); *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 584 n. 3 (6th Cir.1990)(same). Courts have cited two reasons for declining to apply section 1334(c) abstention in a removed action. *See Montague Pipeline Tech. Corp. v. Grace/Lansing*, 209 B.R. 295, 303–04 (Bankr.E.D.N.Y.1997). *First*, a number of courts have noted that section 1334(c) requires that a proceeding be *pending* in state court and, where there is but one state court proceeding at issue, that proceeding is no longer pending in state court upon removal. *See id.* (citing cases); *see also Neuman v. Goldberg*, 159 B.R. 681, 687–88 (S.D.N.Y.1993) (Sweet, J.) ("[T]he statutory scheme of § 1334 precludes the application of the mandatory abstention provision in §§ 1334(c)(2) [sic] to removed actions absent a parallel state case."); *Weisman*, 1992 WL 131080, at *5 (Mukasey, J.); *In re 666 Assocs.*, 57 B.R. at 12; *Kolinsky v. Russ*, 100 B.R. 695, 704 (Bankr.S.D.N.Y.1989) ("The prerequisite for mandatory abstention ... is a pending state court case."); *In re Ross*, 64 B.R. 829, 834 (Bankr.S.D.N.Y.1986); *In re Princess Louise Corp.*, 77 B.R. 766, 771 (Bankr.C.D.Cal.1987); *In re Micro Mart, Inc.*, 72 B.R. 63, 64 (Bankr.N.D.Ga.1987). *Second*, courts have noted that 28 U.S.C. § 1452(b), the statute governing remand of cases that were removed based on federal bankruptcy jurisdiction, makes no mention of section 1334(c) abstention, "thus indicating that the two doctrines should not be applied together." *Montague Pipeline*, 209 B.R. at 304. Although the Second

---

4. Renaissance cites a case from the Eastern District of Texas which noted that "it is the majority opinion that abstention does apply to cases removed under § 1452." 12/18/01 Letter from Schindler to this Court ("Pl. 12/18 Ltr. at 1") (quoting *In re United States Brass Corp.*, 173 B.R. 1000, 1004 (Bankr.E.D.Tex. 1994)). However, as explained below, the majority of courts *in this district* have reached the opposite conclusion.

Circuit has not addressed this issue,[5] the cases from this circuit "almost uniformly hold that Section 1334(c)(2) does not apply to removed actions, at least where, as here, there is no parallel state court action."[6] *Arstk*, 1996 WL 229883, at *4 (Kaplan, J.); *see also, Neuman*, 159 B.R. at 687; *Weisman*, 1992 WL 131080, at *5; *Montague Pipeline*, 209 B.R. at 303; *General Am. Corp. v. Merrill Lynch Commodities (In re Ross)*, 64 B.R. 829 (Bankr. S.D.N.Y.1986); *In re 666 Assocs.*, 57 B.R. at 12; *but see Universal Well Svcs., Inc. v. Avoco Natural Gas Storage*, 222 B.R. 26 (W.D.N.Y.1998); *Gassman v. Gassman, Griper & Golodny*, No. 97 Civ. 0093, 1997 WL 603439, at *2, 1997 U.S. Dist. LEXIS 14850, at *9 (S.D.N.Y. Sept. 30, 1997)(Owen, J.); *Channel Bell*, 1992 WL 232085, at *7–*8 (Leisure, J.).

Even if section 1334(c) were applicable to this Action, RCI has not established one of the elements required for mandatory abstention—that this Action could be "timely adjudicated" in New York State Court.[7] RCI claims that the state court would expeditiously resolve the matter because the Action was filed in the Commercial Division of New York State Court which handles only complex commercial matters and is intended to provide "efficient, expeditious, sound and inexpensive adjudication of such cases." Pl. 11/23/01 Ltr. at 2 (citing the New York State Unified Court System Web site). Although the Commercial Division is well-intentioned, the backlog and delay in that court is well-documented. *See* Def. 12/06/01 Ltr. at 2. Evidence from 1998 shows that the average contract dispute in

---

5. RCI claims that in *In re Cathedral of the Incarnation in Diocese of Long Island*, 99 F.3d 66 (2d Cir.1996), the Second Circuit indicated that it is likely to side with those circuits holding that mandatory abstention does apply to a removed action. *See* Pl. 12/18/01 Ltr. at 1; Pl. 11/23/01 Ltr. The only issue addressed in that case was whether the decision to abstain under section 1334(c)(2) is appealable pursuant to section 1452(b). The Second Circuit stated, in *dicta*, that "[s]ection 1334 commands the federal court to abstain from hearing certain suits related to bankruptcy proceedings, and § 1452(b) provides for the remand of such cases if removed to federal court," but did not address the question of whether section 1334 requires abstention when there is no parallel action pending in state court. *Cathedral of the Incarnation*, 99 F.3d at 69.

6. Courts from other circuits have also held that abstention under 28 U.S.C. § 1334(c) should not be employed in a removed action. *See, e.g., In re Lazar*, 237 F.3d at 981–82; *Lorence v. Does 1 through 50 (In re Diversified Contract Servs., Inc.)*, 167 B.R. 591 (Bankr. N.D.Cal.1994); *Southern Marine and Indus. Servs., Inc. v. AK Eng'g, Inc. (In re AK Servs., Inc.)*, 159 B.R. 76 (Bankr.D.Mass.1993); *Bleichner Bonta Martinez & Brown, Inc. v. National Bank (In re Micro Mart, Inc.)*, 72 B.R. 63, 64 (Bankr.N.D.Ga.1987); *In re Pa-*

*cor, Inc.*, 72 B.R. 927, 931 (Bankr.E.D.Pa.), *aff'd*, 86 B.R. 808 (E.D.Pa.1987).

7. RCI clearly meets the first, second, and fifth requirements of section 1334(c)(2). Defendants were aware that RCI sought to remand the matter within a month of its removal and before this Court or the New York State Court had taken any action, *see* Def. 11/23/01 Ltr.; there is no federal law at issue in the Complaint, *see* Compl.; and this action was 'commenced' in state court, *see Channel Bell*, 1992 WL 232085, at *6 (fifth requirement fulfilled where action plaintiffs sought to remand was commenced in state court).

Defendants contend that RCI has not met the third requirement because this case is a "core" proceeding, rather than a "non-core" "related to" proceeding. *See* Def. 11/23/01 Ltr. at 2–3; *see also In re Howe*, 913 F.2d 1138, 1142 (5th Cir.1990)(mandatory abstention does not apply to core proceedings); *In re Kolinsky*, 100 B.R. 695, 703 (Bankr. S.D.N.Y.1989)(same); *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 587 (Bankr.D.Del.1991) (same). RCI argues that this is a "non-core" proceeding. *See* Pl. 12/6/01 Ltr. at 1–2. Because I conclude that mandatory abstention is not appropriate in any event, it is not necessary to address the "core"/"non-core" issue.

New York County Commercial Division took over 550 days. *See id.* Moreover, the fact that this case is "at the starting line" in the New York State Court, and the Bankruptcy Proceeding is "well advanced," suggests that "even the most efficient court system could not reach the finish line in a timely fashion that would avoid interference with" the Bankruptcy Proceeding. *Neuman,* 159 B.R. at 688; *see also In re Rusty Jones, Inc.,* 124 B.R. 774, 781 (Bankr.N.D.Ill.1991) (refusing to abstain where state proceeding had not commenced and bankruptcy proceedings were relatively advanced). Ultimately, RCI bears the burden of establishing the element of "timely adjudication" and its "naked assertion that the matter can be timely adjudicated in the state court, without more, is insufficient to satisfy the requirement [of mandatory abstention]." *In re Allied Mech. and Plumbing Corp.,* 62 B.R. 873, 878 (Bankr.S.D.N.Y.1986) (citing *In re Burgess,* 51 B.R. 300, 302 (Bankr. S.D.Ohio 1985)).

### 2. Equitable Remand

■ RCI also argues that the Court should remand this Action on equitable grounds. Under 28 U.S.C. § 1452(b), a district court to which a claim or cause of action has been removed may remand on "any equitable ground." *Id.; see also In re 183 Lorraine Street Assoc.,* 198 B.R. 16, 32 (E.D.N.Y.1996); *Nemsa,* 1995 WL 489711, at *7. Courts generally consider the following factors (the "*Drexel* factors") in deciding whether to remand a case based on their discretionary authority to abstain: (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntary removed defendants. *See Nemsa,* 1995 WL 489711, at *7 (citing *Drexel Burnham Lambert Group, Inc. v. Vigilant Insur. Co.,* 130 B.R. 405, 407 (S.D.N.Y.1991)); *see also In re 183 Lorraine Street,* 198 B.R. at 32. When applied to the facts of this case, these equitable factors do not favor remanding the Action to the New York State Court.

### a. Applicable State Law

The Complaint asserts claims for: breach of fiduciary duty, malpractice, breach of contract, fraud, fraudulent concealment, corporate waste and fraudulent conveyance. *See* Compl. ¶¶ 90–163. Renaissance concedes that Delaware law will apply to the breach of fiduciary duty claims against Brandt in his capacity as an officer of DSI. *See* Pl. 12/18/01 Ltr. at 4; *see also Solow v. Stone,* 994 F.Supp. 173, 177 (S.D.N.Y.1998). The claim for aiding and abetting breach of fiduciary duty will likely be governed by Delaware law as well. *See BBS Norwalk One, Inc. v. Raccolta, Inc.,* 60 F.Supp.2d 123, 129 (S.D.N.Y.1999); (citing *Lou v. Belzberg,* 728 F.Supp. 1010, 1023 (S.D.N.Y.1990)).

■ Contrary to RCI's assertion, it is unlikely that a court applying New York choice-of-law rules would find that New York law applies to the remaining tort claims. *See* Pl. 12/18/01 Ltr. at 4. "In tort cases, New York courts apply the law of the jurisdiction with the greatest interest in the dispute." *Solow,* 994 F.Supp. at 177 (citing *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1031 (2d Cir.1996)). In determining which state has the greatest interest in the litigation, New York courts "rel[y], almost exclusively, on the parties' domiciles and the locus of the tort." *Alnwick v. European Micro Holdings, Inc.,* 137 F.Supp.2d 112, 124

(E.D.N.Y.2001) (citing *Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985); *Cooney v. Osgood Machinery Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)); *see also Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir.1996).

■ For choice-of-law purposes, the domicile of a corporation is the state where it maintains its principal place of business. *See Dorsey v. Yantambwe*, 276 A.D.2d 108, 715 N.Y.S.2d 566, 570 (4th Dep't 2000); *Weisberg v. Layne–New York Co.*, 132 A.D.2d 550, 517 N.Y.S.2d 304, 304 (2d Dep't 1987). RCI's principal place of business is either Connecticut, where its headquarters was located, or California or Pennsylvania, where its operating facilities were located.[8] *See* Def. 12/21/01 Ltr. at 3 n. 3; Tr. at 7. DSI and Brant are domiciled in Illinois and Chanin is domiciled in California. *See* Tr. at 17–18; Compl. ¶ 27. There is no evidence that any of the other defendants are domiciled in New York.[9]

■ The locus of the tort "is the place where the injury was felt," not where the fraudulent activity took place. *Alnwick*, 137 F.Supp.2d at 124; *see also H.S.W. Enter., Inc. v. Woo Lae, Oak, Inc.*, 171 F.Supp.2d 135, 142 (S.D.N.Y.2001); *Schultz*, 491 N.Y.S.2d at 95, 480 N.E.2d 679. The injury alleged by RCI is the diminution of the company's value, leading to its bankruptcy. As a Delaware corporation that filed for bankruptcy in Delaware, RCI has "felt" its injury in Delaware. Thus, there is no reason why New York law should apply to the tort causes of action.

■ Nor is there any reason to suppose that New York law will apply to RCI's breach of contract claims. In contract cases, New York courts look to the jurisdiction with "the most significant connection to the dispute." *Alnwick*, 137 F.Supp.2d at 124. When determining a state's interest in a contract dispute, relevant considerations include: (1) the place of contracting; (2) the place of negotiation and performance; (3) the location of the subject matter of the contract; and (4) the domicile or place of business of the contracting parties. *See id.; Matter of Arbitration Between Allstate Ins. Co.*, 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993).

RCI alleges that DSI and Brandt breached their contract to provide turnaround services to RCI, and that Chanin breached its agreement to provide merger and acquisition advice to RCI. *See* Compl. ¶¶ 105–108, 145. The contracts between DSI and RCI were executed in Illinois (by DSI) and Connecticut (by RCI) while the contract between Chanin and RCI was

---

**8.** At a December 11th conference before this Court, counsel for RCI initially asserted that Renaissance had its principal place of business in New York. *See* Transcript of 10/11/01 Conference ("Tr.") at 12. Defendants' counsel pointed out that this statement was incorrect. *Id.* at 16–17. Defendants' counsel explained that RCI's principal place of business was in Connecticut and that, although "there was a time when [RCI] 'had executive offices' " in New York, those offices were simply a couple of conference rooms used by RCI marketing staff when they were in New York. *Id.* (quoting Complaint). Plaintiff's counsel did not contest this assertion.

**9.** At the October 11th Conference, counsel for the Bondholders stated that defendant TCW has its principal place of business in California and he was not sure if any other Bondholder had an office or principal place of business in New York. *See* Tr. at 17–18. The Complaint only states that one defendant, Chanin, has an office in New York and RCI has offered no evidence that any other defendant has an office, let alone its principal place of business, in New York.

negotiated and executed by Chanin's California office. *See* Def. 12/21/01 Ltr. at 3. RCI points out that DSI and Brandt did much of their work related to this Action in New York and had numerous meetings in New York, and notes that the restructuring professionals (*i.e.*, lawyers, accountants and investment bankers) all worked in New York.[10] *See* Pl. 12/18/01 Ltr. at 41. But defendants insist that, to the extent that DSI provided consulting services, it worked primarily in Connecticut and Illinois. *See* Def. 12/21/01 Ltr. at 3. Defendants also point out that, to the extent that DSI and Brandt were hired to serve as officers and directors of RCI, their service was performed in Delaware, where RCI was incorporated. *See id.* As for Chanin, most of its contractual services were performed in California. *See id.* Finally, the subject of the contracts was RCI, a company incorporated in Delaware with its headquarters in Connecticut, and there is no evidence that any of the parties were domiciled in New York. Thus, it is highly unlikely that New York law will apply to the breach of contract claims.

### b. Difficulty of State Law

Even if New York law were to apply to some claims, RCI has admitted that there are no state law issues in this case that are unsettled or particularly difficult. *See* Tr. at 8 (RCI's counsel described the claims as ones that are "adjudicated every day in state court."). This lack of complexity "significantly undercuts the degree to which the state law factor weighs in favor of remand to [the] New York courts." *Nemsa,* 1995 WL 489711, at *7; *see also Weisman,* 1992 WL 131080, at *5.

### c. Comity

Comity "focuses on the state's interest in developing its law and applying its law to its citizens." *Renaissance Cosmetics,* 2000 WL 890191, at *3 (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993)). New York has little interest in this lawsuit. New York law may not predominate; no party is, or has ever become, a New York citizen; and there is no evidence that any party is a domiciliary of New York. *See* Def. 12/06/01 Ltr. at 3. In fact, all nine plaintiffs are incorporated in Delaware and eight of the defendants are also incorporated in Delaware or are partnerships organized under the laws of Delaware. *See* Def. 11/23/01 Ltr. at 3 (citing Compl. ¶¶ 17–37). These circumstances, combined with the fact that any New York law at issue is not unusually complex or unsettled, neutralizes any comity concerns that would favor remand.

### d. Effect on the Bankruptcy Proceeding and Administration of RCI's Estate

The first and sixth *Drexel* factors—effect on the efficient administration of the estate and relatedness to the Bankruptcy Proceeding—weigh heavily against remand. As RCI concedes, this Action is clearly "related to" the Bankruptcy Proceeding. *See* Pl. 11/23/01 Ltr. at 1. The crux of the Complaint is that defendants caused RCI to file for bankruptcy in June 1999 rather than August 1998, significantly depleting its assets in the interim. Moreover, the outcome of the Action will significantly effect both the size and administration of RCI's estate, including resolution of the Bondholders' and DSI's proofs of claim against the estate. Thus, RCI's claims are

---

10. Renaissance maintains that, if New York law does not apply, then Connecticut law will apply. *See* Pl. 12/18/01 Ltr. at 4.

"inextricably tied" to the Bankruptcy Proceeding.[11] *Sun West Distrib., Inc. v. Grumman Energy Sys. Co.*, 69 B.R. 861, 866–67 (Bankr.S.D.Ca.1987) (quoting *In re All Am. of Ashburn, Inc.*, 49 B.R. 926, 927 (Bankr.N.D.Ga.1985)). Furthermore, the Delaware Bankruptcy Court is intimately familiar with the parties and the factual history of this case. *See* Def. 12/06/01 Ltr. at 3. Indeed, the Bankruptcy Court was responsible for approving RCI's continued use of DSI's services at the commencement of the Bankruptcy Proceeding. *See id.;* Def. 11/23/01 Ltr. at 2. Accordingly, to remand this case would result in "a duplication of effort and multiplicity of litigation" which may waste judicial resources and impede the efficient administration of RCI's estate. *Nemsa*, 1995 WL 489711, at *8 (quoting *In re Bros. Coal Co. Inc.*, 6 B.R. 567 (Bankr.W.D.Va.1980)).

### e. Prejudice to Defendants

Another *Drexel* factor weighing against remand is the possibility of prejudice to defendants. Because all defendants have consented to removal, refusing remand would not prejudice involuntarily removed defendants. Meanwhile, remand of this action would prejudice defendants because it would moot their motion for change of venue and preclude referral to the Delaware Bankruptcy Court.

### f. Right to Jury Trial

The one *Drexel* factor weighing in favor of remand is the possibility that RCI's right to a jury trial might be compromised. Pursuant to 28 U.S.C. § 157(e), a bankruptcy court may only conduct a jury trial if both parties expressly consent and a special designation of jurisdiction is granted by the district court. Thus, to the extent that the right to a jury trial may apply to this action, RCI would not be entitled to a jury trial as of right in the Bankruptcy Court. However, because every other *Drexel* factor weighs against remand, the jury factor alone does not tip the balance in favor of remand. *See Nemsa*, 1995 WL 489711, at *8 (recognizing that Plaintiff would have no right to jury trial in Bankruptcy Court but declining to remand under section 1452(b)). Therefore, RCI's motion for equitable remand is denied.

### 3. Discretionary Abstention

■ RCI also moves for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) states:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

As noted above, courts in the Second Circuit have generally held that abstention under 28 U.S.C. § 1334(c) does not apply to removed actions. *See Nemsa*, 1995 WL 489711, at *3 (citing cases). But even if section 1334(c) were to apply to this Action, abstention would not be warranted. The factors that courts consider when deciding whether to abstain pursuant to section 1334(c) are virtually the same as those considered in connection with a motion to

---

**11.** Plaintiff argues that there is little relation between this Action and the Bankruptcy Proceeding because the allegations are based on activities that "took place behind closed doors," not "dealings that took place in front of the Bankruptcy Court in Delaware." Pl. 11/23/01 Ltr. at 2–3. This argument misinterprets the "relatedness" inquiry. The question is not whether the Bankruptcy Court has *personal knowledge* of the facts giving rise to the removed action; it is whether the issues presented in this action are central to, or interrelated with, the Bankruptcy Proceeding.

remand pursuant to section 1452(b). *See id.* Therefore, because remand is not warranted in this case, neither is discretionary abstention. *See id.*

## B. The Venue Motion

Defendants move to transfer this action to the District Court of Delaware pursuant to 28 U.S.C. § 1412. That section provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Courts in this district have generally held that section 1412 only applies to "core" proceedings, not to proceedings that are merely "related to" bankruptcy proceedings. *See Nemsa*, 1995 WL 489711, at *9 (citing cases). Thus, a determination that this is a non-core proceeding would make section 1412 inapplicable.

There is no need here to determine whether this action is core or non-core because transfer to the Delaware District Court is appropriate under 28 U.S.C. § 1404(a), which may be applied to a non-core proceeding. *See id.* at *10. Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The factors relevant to the consideration of a section 1404(a) transfer are:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties;

(4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.[12]

*See Everest Capital,* 178 F.Supp.2d at 465; *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 56 (S.D.N.Y.2001).

Normally, a plaintiff's choice of forum is entitled to substantial weight and should not be disturbed unless the balance of the factors weighs strongly in favor of transfer. *See Berman v. Informix Corp.,* 30 F.Supp.2d 653, 656 (S.D.N.Y.1998). However, "this deference [to plaintiff's choice] is not dispositive." *Iragorri v. United Tech. Corp. et al.,* 274 F.3d 65, 70 (2d Cir.2001). Where, as here, the chosen forum is not where plaintiff resides, the degree of deference given to plaintiff's choice of forum depends on the motivations behind that choice. *Id.* at 72. A court must give greater deference to a plaintiff's choice of a non-home forum where that choice was "motivated by legitimate reasons, including plaintiff's convenience and the ability of [plaintiff] to obtain jurisdiction over the defendant." *Id.* Courts should give "diminishing deference" to a plaintiff's choice of a non-home forum "to the extent that it was motivated by tactical advantage," such as forum shopping. *Id.*

The fourth and seventh factors do not favor any particular forum. The facts giving rise to RCI's causes of action took place in various jurisdictions, and it is not

---

**12.** A court should consider the relative means of the parties "[w]here a disparity exists between the means of the parties, in determining venue." *Everest Capital Ltd. v. Everest Funds Mgmt. LLC,* 178 F.Supp.2d 459, 467 (S.D.N.Y.2002) (quoting *Aerotel, Ltd. v. Sprint Corp.,* 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000)). No evidence as to relative means has been provided.

clear that any state's law—particularly New York's—will predominate. *See infra* Part II.A.2.a. In any event, because the relevant law is not particularly complex, there is no reason to think that the Delaware court will be less capable of applying that law than the New York court. *See supra* Part II.A.2.b.

The convenience of the parties and witnesses, and ease of access to sources of proof, support transfer to Delaware. As RCI admits, none of the parties are physically located in New York. *See* Pl. 12/18/01 Ltr. at 4. Meanwhile, RCI has filed for bankruptcy in Delaware and is currently litigating there. RCI insists that a number of non-party witnesses are located in New York. *See id.* at 3. In particular, it points to the investment bankers, consultants and attorneys who were involved in the events giving rise to this case. *See id.* However, the deposition of a non-party witness is generally conducted where that non-party is located. Moreover, these parties are large, national professional firms who would not be seriously inconvenienced if required to travel to Delaware. *See Intel Corp. v. Broadcom Corp.*, 167 F.Supp.2d 692, 706 (D.Del.2001) ("[T]he conveniences of modern travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses."); *Tse v. Ventana Med. Sys., Inc.*, No. 97–37–SLR, 1997 WL 811566, at *6 (D.Del. Nov.25, 1997) ("[F]or a company engaged in business throughout the Unites States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect."). Moreover, there is no suggestion that these non-party witnesses would have to be compelled to testify in any trial of this case. *See Wieczenski v. Brake Shop*, Civ. A. No. 93–5673, 1994 WL 111082, at *8 (D.N.J. Mar.28, 1994) (granting motion to transfer and noting that "nothing has been presented to suggest that the key non-party witnesses ... would not voluntarily appear as a trial witness in [the transferee court] in view of the fact that he resides beyond that court's subpoena power."). Finally, while many of the relevant documents are scattered throughout the United States, several significant documents are already on file in the Delaware Bankruptcy Court and/or located in the offices of RCI's Delaware counsel. *See* Def. 12/21/01 Ltr. at 2–3.

Trial efficiency also favors Delaware. Because RCI's bankruptcy proceeding has been pending in Delaware for two years, the Delaware Bankruptcy court is intimately familiar with the parties and the factual history of this case. In contrast, the New York court has done nothing with respect to this case, and there is no evidence that the case would be more timely adjudicated in New York.[13] *See supra* Part II.A.1.

Finally, transfer is in the interests of justice. In 1999, RCI sought the Delaware Bankruptcy court's approval of DCI and Brandt as its turnaround profession-

---

13. RCI argues that it would be more efficient to litigate this case in New York because it is related to *Houbigant, Inc. et al. v. Dev. Specialists, Inc. et al.*, 01 Civ. 7888, currently before Judge Laura Taylor Swain. *See* Pl. 12/19/01 Ltr. at 4–5. In that case, Houbigant, one of RCI's creditors, seeks to recover damages for, *inter alia*, the particularized injury it suffered as a result of Brandt's alleged breach of fiduciary duty he owed RCI and its creditors. While Houbigant's allegations arise out of many of the same facts as this case, it involves different plaintiffs and, with the exception of Brandt and DSI, different defendants. Discovery has not yet commenced in *Houbigant*, but the parties have fully briefed the defendants' dispositive motions. *See* Pl. 12/18/01 Ltr. at 5; Def. 12/21/01 Ltr. at 1 n. 1. If some of the claims survive, defendants may seek to transfer *that* case to Delaware, but that does not mitigate against transfer of *this* case.

**20**

als. In June 1999, after the alleged mismanagement had occurred, RCI represented to the Delaware Bankruptcy court that DSI was "intimately familiar" with its operation, "uniquely qualified", and "particularly well suited" to provide services to the company during its bankruptcy. Def. 12/6/01 Ltr. at 1; Def. 12/21/01 Ltr. at 2 (quoting RCI's sworn statements before the Delaware Bankruptcy court). Accordingly, the Bankruptcy Court concluded in its August 3, 2000 Order that "the employment of DSI is necessary and would be in the best interests of the Debtors, their estates and their creditors." *Id.* (quoting August 3, 2000 Order). Given the apparent inconsistency between the allegations in this case and RCI's representations to the Bankruptcy Court a few years ago, justice would be best served by allowing the Delaware Bankruptcy court to hear this matter.

While some deference is due to RCI's choice of forum, that deference is diminished in the instant case because RCI chose a forum other than its home forum and there is no evidence that this choice was motivated by "legitimate reasons." *Iragorri*, 274 F.3d at 72. New York was not substantially more convenient than Delaware, given that RCI was not located in New York and was already litigating in the Delaware Bankruptcy court. *See id.* Nor has RCI suggested that defendants were not amenable to suit in Delaware. *See id.* Indeed, the only explanation I can discern for RCI's choice of forum is its desire to avoid the Delaware Bankruptcy court, which previously found DCI qualified to provide services to RCI's estate. If this is so, then RCI's forum choice was motivated by "tactical advantage." *Id.* Because the diminished deference given to RCI's choice of forum is outweighed by the other relevant factors which heavily favor Delaware, transfer is appropriate.

## III. CONCLUSION

For the aforementioned reasons, RCI's motion to remand is denied. Because defendants have met their burden under 28 U.S.C. § 1404(a), their motion to transfer venue to the Delaware District Court is granted.

SO ORDERED: