J. Andrew RAHL, Jr., as Trustee of the Flag Litigation Trust, Plaintiff,

v.

Andres BANDE, Edward McCormack, Larry Bautista, Daniel C. Petri, Adnan Omar, Thomas Bartlett, Alfred Giammarino, David Riffelmacher, Dallah Albaraka Holding Company, Verizon Communications Inc., Qwest Communications International Inc., Andersen Worldwide S.C., Arthur Anderson Bermuda and Arthur Andersen & Co. n/k/a Arthur Andersen LLP, Defendants.

No. 04 Civ. 1019(WCC).

United States District Court, S.D. New York.

July 28, 2004.

Abbey Gardy, LLP, Judith L. Spanier, Stephanie Amin–Giwner, Of Counsel, New York, Grant & Eisenhofer, P.A., Jay W. Eisenhofer, Geoffrey C. Jarvis, Russell D. Paul, Of Counsel, Wilmington, DE, for Plaintiff.

Shearman & Sterling, Jerome S. Fortinsky, Tammy P. Bieber, Michael T. Rasnick, Panagiotis Katsambas, Of Counsel, New York, Attorneys for Defendant Daniel C. Petri.

Kirkland & Ellis, Thomas D. Yannucci, P.C., James P. Gillespie, Craig S. Primis, John C. O'Quinn, Of Counsel, Washington, D.C., Attorneys for Defendant Verizon Communications Inc.

O'Melveny & Myers LLP, Barry H. Goldstein, Matthew W. Close, Of Counsel, New York, Attorneys for Defendant Qwest Communications International Inc.

Arnold & Porter, Kent Yalowitz, Of Counsel, New York, Attorneys for Defendant Arthur Andersen & Co. n/k/a Arthur Andersen LLP.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff J. Andrew Rahl, Jr. ("Rahl" or the "Trustee"), as Trustee of the Flag Litigation Trust (the "Litigation Trust" or "plaintiff"), filed this action in the Supreme Court of New York State, New York County, against Andres B. Bande, Edward McCormack, Larry Bautista, Daniel C. Petri, Adnan Omar, Thomas Bartlett, Alfred Giammarino, David Riffelmacher (collectively "the individual defendants"), Dallah Albaraka Holding Company ("Dallah"), Verizon Communications, Inc. ("Verizon"), Qwest Communications International, Inc. ("Qwest"), and Andersen Worldwide S.C., Arthur Andersen Bermuda and Arthur Andersen & Co. n/k/a Arthur Andersen LLP (collectively "Andersen"). Defendants removed the action to this Court asserting jurisdiction under 28 U.S.C. §§ 1334(b), 1367, 1331 and identified the matter as related to[1] *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02 Civ. 3400(WCC) (the "Flag Securities Litigation"), which is currently pending before this Court. Plaintiff now moves to remand the action to state court, contending that this Court lacks subject matter jurisdiction. In the event that we conclude that this Court has subject matter jurisdiction, plaintiff requests that we abstain from exercising such jurisdiction pursuant to 28 U.S.C. § 1334(c) or remand the action on equitable grounds. Plaintiff also moves for an award of attorney's fees pursuant to 28 U.S.C. § 1447(c). For the reasons stated herein, plaintiff's motions to remand and for attorney's fees are denied. The Court will also accept this matter as related to the Flag Securities Litigation that is currently pending before the Court.

### BACKGROUND

Unless otherwise noted, the following factual allegations appear in plaintiff's Complaint.[2] Flag Telecom Holdings Ltd. ("Flag" or the "debtor"), a company organized under the laws of Bermuda, was created in 1999 to serve as the holding company for several entities originally established by Verizon and other investors that operated in the international telecommunications market. (Complt. ¶¶ 2, 3.) Subsequent to its formation, Flag commenced an aggressive expansion that included a joint venture with GTS Transatlantic ("GTS") to build a fiberoptic cable connecting New York, London and Paris called the Flag Atlantic–1 System (the "FA–1 System"). (*Id.* ¶ 54.) By early 2000, Flag allegedly became insolvent after a glut of supply on the telecommunications market caused a rapid decline in the price of capacity on international fiber optic networks. According to plaintiff, even after becoming insolvent, the company continued "its reckless expansion program." (*Id.* ¶¶ 4–5.) For example, in March 2000, the company issued approximately $600 million in bonds and made significant investments in the FA–1 System, a separate program of expansion into north Asia and a fiber optic network in Europe. (*Id.* ¶ 5.) Flag then entered into a series of transactions with Verizon, on terms favorable to Verizon, that deepened Flag's insolvency. (*Id.*)

Rather than reveal Flag's insolvency, the individual defendants, who were offi-

---

**1.** *See* Local Civil Rule 1.6.

**2.** All references to the "Complaint" are to plaintiff's Verified Complaint.

cers and directors of Flag, allegedly concealed the company's financial woes by filing false financial statements with the SEC from 2000 until April 2002, and by making false statements in press releases each time Flag announced its financial results during that period. (*Id.* ¶ 6.) According to plaintiff, the individual defendants caused Flag to report its financial results in violation of Generally Accepted Accounting Principles ("GAAP"), (*id.* ¶ 45), and issued misleading "pro forma" financial reports. (*Id.* ¶ 151.) The individual defendants also allegedly caused the company to engage with competitors in numerous swaps of "dark" or unused fiber capacity to artificially inflate revenues, (*id.* ¶¶ 109–132), and failed to write-down timely the impairment to Flag's long-lived assets. (*Id.* ¶ 162.)

On February 13, 2002, Flag announced that it was reviewing its business "in light of deteriorating market conditions." (*Id.* ¶ 194.) On April 12, 2002, Flag and four of its subsidiaries filed Chapter 11 bankruptcy petitions. Shortly thereafter, other Flag subsidiaries filed Chapter 11 bankruptcy petitions. (*Id.* ¶ 195.) On September 26, 2002, the bankruptcy court approved Flag and its subsidiaries' Plan of Reorganization (the "Plan"). (Primis Decl., Exs. A, C.) The Plan became effective on October 9, 2002, (Pl. Mem. Supp. Mot. Remand at 2), and a new entity, Flag Telecom Group Ltd. ("New Holdco"), emerged from bankruptcy. Although the Plan has become effective, several matters, including an adversary proceeding filed by certain Flag subsidiaries against parties that are not involved in this action, are still pending before the bankruptcy court. (Primis Decl., Ex. C.)

Under the Plan, certain Flag bondholders and creditors (the "New Holdco shareholders" or the "Litigation Trust Beneficiaries") were granted ownership of 100% of the common shares of New Holdco.

(*Id.*, Ex. B ¶ 7.5.1.) On January 11, 2004, Reliance Gateway Net Private Ltd. acquired those shares after the New Holdco shareholders approved such sale. (Pl. Mem. Supp. Mot. Remand at 2.)

The Plan also created the Litigation Trust. The Plan provides:

> On the Effective Date, the Debtors shall transfer and assign any choses in action then in existence possessed by the Debtors against any of their officers and directors, together with all insurance coverage applicable to such choses in action against insurers that sold insurance policies covering liabilities of the Debtors and their directors and officers, to the Litigation Trust, which will retain and liquidate these choses in action as the successor to the Debtors for these purposes. As and when there is any recovery on these choses in action, whether by settlement judgment or otherwise, such recovery shall be distributed on a Pro Rata Basis to the Litigation Trust Beneficiaries.

(Primis Decl., Ex. B ¶ 7.22.1.) The New Holdco shareholders are the Litigation Trust Beneficiaries, (*id.* ¶ 1.1.100), and Rahl is the Litigation Trust Trustee. (*Id.*, Ex. C.) The Trustee brings the present action pursuant to this grant of authority.

Counts I, II and III of the Complaint assert claims for breach of fiduciary duty against the individual defendants and Andersen. In each of these counts, plaintiff refers to the Bermuda Companies Act of 1981 and to the general duty of good faith and loyalty that fiduciaries owe to their corporations. (Complt. ¶¶ 255, 265, 272.) Plaintiff alleges that the individual defendants breached their fiduciary duties by: (1) deepening Flag's insolvency to enhance their personal wealth (*id.*, Count I); (2) issuing false financial statements (*id.*, Count II); and (3) causing Flag to enter into certain transactions under terms that were unfavorable to Flag. (*Id.*, Count III.)

Count IX of the Complaint asserts a claim against only McCormack who allegedly caused one of Flag's subsidiaries to issue a dividend in violation of § 54 of the Bermuda Companies Act.

Count IV of the Complaint asserts a claim against Verizon wherein the Trustee seeks to avoid an allegedly fraudulent conveyance to Verizon pursuant to 11 U.S.C. § 544(b) which incorporates N.Y. DEBT. AND CREDITOR LAW §§ 270–281. Plaintiff alleges that Flag provided KPNQwest with capacity on its FA–1 System in exchange for capacity on KPNQwest's European network. Flag then sold the capacity on the European network to Verizon for prices below market value and far less than those Flag paid for the capacity. (Complt.¶ 69.) Count VII of the Complaint purports to state a claim against Verizon for aiding and abetting this allegedly fraudulent conveyance.

Count V of the Complaint asserts claims against Qwest and Verizon for aiding and abetting the breaches of fiduciary duty that plaintiff asserts in Count I of the Complaint.[3] Count VI of the Complaint asserts a claim against Qwest for aiding and abetting the breaches of fiduciary duty that allegedly occurred in connection with the issuance of Flag's financial statements. In Count VIII, plaintiff claims that certain individual defendants were agents of Verizon or Dallah and that those companies are therefore liable for their agents' breaches under the doctrine of respondeat superior. Finally, Count X of the Complaint asserts a claim against Andersen for professional malpractice.

## DISCUSSION

### I. *Jurisdiction Under 28 U.S.C. § 1334(b)*

28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Subsequent to removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court from which it came. *Id.* § 1447(c). Defendants claim that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), which provides: "Notwithstanding any Act of congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

### 1. *Whether Count IV "Arises Under" Title 11*

Defendants contend that the claim asserted in Count IV of the Complaint "arises under" 11 U.S.C. § 544(b)(1). Section 544(b)(1) provides: "The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim. . . ." *Id.* This provision allows a bankruptcy trustee or a debtor in possession to assert for the benefit of all creditors the rights that any individual creditor has under applicable state law to avoid fraudulent transfers made prior to the filing of the bankruptcy petition. *See*

---

**3.** In Count I, plaintiff alleges that the individual defendants and Andersen exacerbated Flag's insolvency to enhance their own personal wealth.

*Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir.2000).

In Count IV of the Complaint, plaintiff seeks to avoid an allegedly fraudulent transfer of dark fiber on KPNQwest's European telecommunications network from Flag to Verizon. In this count, plaintiff states:

> Under Bankruptcy Code § 544(b)(1), Plaintiff's trustee is authorized to utilize New York State's version of the Uniform Fraudulent Conveyance Act (UFCA), codified at N.Y. Debt. & Cred. Law §§ 270–281, to prove that certain transactions are constructively fraudulent. . . . Under the laws of New York and Bermuda, the transfer of assets from KPNQwest through FLAG to Verizon constituted a fraudulent conveyance because FLAG was insolvent at the time of transfer.

(Complt.¶¶ 281, 283.) Plaintiff contends that this claim arises under state law and that it merely refers to 11 U.S.C. § 544(b)(1) in the Complaint "to provide context and background to the state law claim." (Pl. Mem. Supp. Mot. Remand at 13.)

█ Although plaintiff's 99–page Complaint may contain many allegations that are included only to provide "context and background," plaintiff's reference to the Trustee's grant of authority in § 544(b)(1) cannot be read as one of them. Absent this provision of the Bankruptcy Code (the "Code"), the Trustee would lack standing to bring such a claim on behalf of the Litigation Trust. Thus, the claim of Count IV of the Complaint "arises under" title 11. *See Carlton v. Baww, Inc.*, 751 F.2d 781, 787 (5th Cir.1985) ("A proceeding by a trustee to void a fraudulent conveyance clearly 'arises under title 11.' "); *see also id.* (" 'Any action by the trustee under an avoiding power would be a proceeding

arising under title 11, because the trustee would be claiming based on a right given by' " the Code.) (quoting H.R.Rep. No. 95–595, at 445–46 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6401). Contrary to plaintiff's suggestion, the fact that the present action was filed in state court does not require a different result. *See Allied Signal Recovery Trust v. Allied Signal Inc.*, 298 F.3d 263, 266 (3d Cir.2002) (holding in a removed action that the plaintiff's claim arose under title 11 because the plaintiff, a litigation trust created by a plan of reorganization, sought to avoid a fraudulent conveyance pursuant to the trustee's authority under § 544(b)(1)). Therefore, we conclude that this Court has jurisdiction over plaintiff's claim in Count IV of the Complaint because that claim "arises under" title 11. Because we have jurisdiction over this claim pursuant to § 1334(b), we also have supplemental jurisdiction over the remaining claims in the Complaint. *See* 28 U.S.C. § 1367(a); *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 115 (2d Cir.1992) (hereinafter *"Cuyahoga"*) ("Given an independent jurisdictional source like that provided by § 1334(b), federal courts possess supplemental jurisdiction over related claims."). Accordingly, we deny plaintiff's motion to remand for lack of subject matter jurisdiction.

### 2. *Whether Plaintiff's Claims Are "Related To" Flag's Bankruptcy Case*

█ The claims in plaintiff's Complaint are also "related to" Flag's Chapter 11 bankruptcy. A proceeding is "related to" a bankruptcy case when: (1) the outcome of the litigation "might have any 'conceivable effect' on the bankrupt estate," *Cuyahoga*, 980 F.2d at 114; or (2) the litigation has a "significant connection with [the] bankruptcy case." *Turner v. Ermiger (In*

*re Turner)*, 724 F.2d 338, 341 (2d Cir. 1983); *see also Cuyahoga*, 980 F.2d at 114 (noting that it is sufficient to show that the litigation might have a conceivable effect on the bankrupt estate *or* that it has a significant connection with a bankruptcy case). "A proceeding 'need not necessarily be against the debtor or against the debtor's property' to satisfy the requirements for 'related to' jurisdiction.... 'Instead, there must be some nexus between the "related" civil proceeding and the title 11 case.'" *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir.1996) (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir.1984)). "'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting *Pacor*, 743 F.2d at 994).

▮ Plaintiff contends that this proceeding cannot be "related to" Flag's bankruptcy case because bankruptcy jurisdiction ceases to exist upon confirmation and substantial consummation of a plan of reorganization. (Pl. Mem. Supp. Mot. Remand at 6; Pl. Reply Mem. Supp. Mot. Remand at 2–3.) However, the Second Circuit has held that bankruptcy jurisdiction exists after a plan of reorganization has become effective when the proceeding at issue is "not independent of the reorganization." *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir.2002). A proceeding may have a "significant connection" with a Chapter 11 bankruptcy case subsequent to confirmation of a plan when resolution of the dispute requires the interpretation of the plan of reorganization and the implementation of that plan. *See Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, No. 03 Civ. 7248, 2004 WL 224505, at *3, *5 (S.D.N.Y. Feb.5, 2004) (hereinafter *"Lummus"*); *see also In re Resorts Int'l, Inc. v. Price Waterhouse & Co., LLP*, 372 F.3d 154, 167 (3d Cir.2004) ("Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus" to the bankruptcy case to support "related to" jurisdiction.); *U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 306 (5th Cir.2002).

In *U.S. Brass*, Shell Oil Co. and CNA Holdings, Inc. (collectively "the claimants") had substantial claims against U.S. Brass. The bankruptcy court approved a plan whereby the debtor would pay $2.5 million to the claimants from the debtor's estate. 301 F.3d at 301. Under the plan, the claimants were entitled to pursue their claims further, either personally or by establishing a litigation trust, through litigation against the debtor but the amount recoverable was limited to the amount of any applicable insurance proceeds. *Id.* After the plan became effective, the debtor and the claimants reached a settlement agreement wherein they agreed to submit the claimants' claims to binding arbitration. *Id.* at 302. The debtor and the claimants subsequently moved in the bankruptcy court for approval of the settlement agreement and the insurers objected. *Id.* The bankruptcy court denied the motion to approve the settlement because: (1) the settlement agreement failed to settle the claims at issue; and (2) the settlement agreement modified the confirmed plan by providing for arbitration rather than litigation of the dispute. *Id.* at 302–03. The district court affirmed. On appeal to the Fifth Circuit, the insurers argued that the

bankruptcy court lacked jurisdiction to hear the motion in the first instance because the plan of reorganization had been confirmed and substantially consummated. *Id.* at 303. The Fifth Circuit ruled that there was jurisdiction under § 1334(b) because the proceeding was "related to" the bankruptcy case. *Id.* at 305. The court reasoned that even if the estate ceased to exist because the plan had become effective, the plan had not been fully consummated because the claimants' action had yet to be resolved. Thus, the court noted, "the proceeding [would] certainly impact compliance with or completion of the reorganization plan." *Id.*

When the present action was removed, several claims and an adversary proceeding were pending before the bankruptcy court. (Primis Decl., Ex. C.). Thus, the Plan had become effective but it was not yet "fully consummated." *See U.S. Brass,* 301 F.3d at 306. In the Plan, the debtor transferred its right to bring certain claims against certain defendants to the Litigation Trust. Defendants cite language in the Plan that they argue establishes that the Trustee has exceeded his grant of authority by instituting action against parties that are not "officers or directors" of Flag. (Primis Decl., Ex. A ¶ 7.22.) The determination of which claims were transferred to the Litigation Trust will necessarily involve the interpretation and implementation of the Plan because the Court will be required to decide which of Flag's claims were transferred to the Litigation Trust under the Plan. Although this inquiry may not require an exhaustive parsing of the Plan, there is a sufficient nexus between Flag's bankruptcy case and this proceeding to support post-confirmation "related to" jurisdiction.

■ Plaintiff contends that each claim in its Complaint is specifically authorized by the Plan and that defendants' objec-

tions are based on "a narrow reading" of the Plan. (Pl. Reply Mem. Supp. Mot. Remand at 3 n. 7.) Plaintiff further notes that even if the Trustee has exceeded his authority under the Plan, the bankruptcy court can modify the Plan to allow all of the Trustee's claims without divesting the state court of jurisdiction. (*Id.*) Although this argument is advance to demonstrate that "related to" jurisdiction is absent in the present case, it actually suggests that plaintiff recognizes that such jurisdiction exists. If the bankruptcy court can enter an order allowing the Trustee to proceed with his claims in state court, there is bankruptcy jurisdiction pursuant to § 1334(b). While the state court may not be divested of jurisdiction to hear the case, the state court's jurisdiction is not exclusive. Accordingly, we conclude that even if plaintiff had not asserted a claim "arising under" title 11, this Court has subject matter jurisdiction pursuant to § 1334(b) because this proceeding is "related to" Flag's bankruptcy case.

## II. *Abstention*

### A. *Mandatory Abstention*

Section 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). This provision is inapplicable here because, as discussed *supra* Part I.A., Count IV arises under title

11 and the Court has supplemental jurisdiction over the remaining claims as a result. *See Allied Signal Recovery Trust,* 298 F.3d at 266 (holding that mandatory abstention was inapplicable because the trustee asserted a claim under § 544(b)(1)). Therefore, we need not address the split of authority with respect to defendants' contention that § 1334(c)(2) does not apply to removed actions. *Compare Lummus,* 2004 WL 224505, at *8 (noting that the majority rule in this district is that mandatory abstention is inapplicable in removed actions), *with Christo v. Padgett,* 223 F.3d 1324, 1331–32 (11th Cir.2000) (noting that a majority of courts apply mandatory abstention to removed actions).

**B. *Permissive Abstention and Equitable Remand***

Section 1334(c)(1) provides: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1334(c)(1). Section 1452(b) also allows a district court to remand a removed action back to state court on "any equitable ground." The factors to be considered by the district court when determining whether permissive abstention or equitable remand is appropriate are "virtually the same." *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.,* 277 B.R. 5, 17 (S.D.N.Y.2002). When considering whether to abstain or remand on equitable grounds, courts consider, *inter alia,* the following relevant factors: (1) whether issues of state law predominate; (2) whether judicial economy would be served by abstention or equitable remand;

(3) whether § 1334(b) is the sole basis for exercising federal jurisdiction; (4) whether the proceeding involves non-debtors; (5) " 'the degree of relatedness or remoteness of the proceeding to the main bankruptcy case' "; and (6) the likelihood that the proceeding was commenced in a particular forum because of forum shopping on the part of one of the parties. *See NYCERS v. Ebbers (In re WorldCom, Inc. Sec. Litig.),* 293 B.R. 308, 332 (S.D.N.Y.2003) (quoting *Rubin Baum Levin Constant & Friedman v. Mushkin (In re Masterwear Corp.),* 241 B.R. 511, 520 (Bankr.S.D.N.Y. 1999)); *see also Renaissance Cosmetics,* 277 B.R. at 14, 17. Because district courts have a " 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' " *In re WorldCom,* 293 B.R. at 332 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)), there is a presumption in favor of the exercise of federal jurisdiction and against abstention. *See Woodford v. Cmty. Action Agency, Greene County,* 239 F.3d 517, 522 (2d Cir.2001).

**1. *Issues of State Law***

It is unclear whether issues of New York State law predominate in this case. First, plaintiff references Bermuda law in five of the ten counts of the Complaint so it is not even clear that New York law applies to the majority of plaintiff's claims and, as discussed *supra* in Part I.A., Count IV arises under federal law.[4] However, even if New York law applied to the majority of plaintiff's claims, the existence of state law claims does not automatically dictate remand or abstention especially where, as is the case here, the state law claims are not particularly novel or com-

---

4. Although plaintiff acknowledges that its Complaint makes reference to Bermuda law in five counts, it concedes only that Count IX of the Complaint is brought pursuant to Bermuda law. (Pl. Reply Mem. Supp. Mot. Remand at 8.)

plex. *See Renaissance Cosmetics*, 277 B.R. at 16 ("This lack of complexity 'significantly undercuts the degree to which the state law factor weighs in favor of remand to [the] New York courts.' ") (quoting *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 Civ. 0277, 1995 WL 489711, at *7 (S.D.N.Y. Aug. 15, 1995)).

### 2. *Judicial Economy*

Plaintiff does not dispute that its Complaint is based on the same nucleus of operative facts that form the basis of the Proposed Class Action Complaint (the "Proposed Class Action Complaint") filed in the Flag Securities Litigation currently pending before this Court. Plaintiff nevertheless argues that judicial economy would not be served by allowing this case to proceed before this Court because its claims are based predominately on alleged breaches of fiduciary duty and fraudulent conveyances and the Proposed Class Action Complaint raises issues of federal securities law. This argument presupposes that if a failure to remand or abstain would require the Court to consider additional legal claims, it is more efficient to allow the litigations to proceed in separate fora. However, limiting the claims to be tried in one forum does not necessarily result in a more efficient adjudication of controversies—judicial economy is best served by avoiding the needless duplication of judi-

cial resources. *See In re WorldCom*, 293 B.R. at 333. Although failure to remand the present action will complicate the task before this Court, we conclude that it would be more efficient if only one court were required to familiarize itself with the voluminous factual record that is sure to evolve in connection with both cases.[5] Moreover, litigating these matters in the same court will reduce the potential for inconsistent adjudications and allow for more efficient, non-duplicative discovery than would be possible if the two litigations were allowed to proceed in separate fora. *Id.*

### 3. *The Existence of an Alternative Jurisdictional Basis*

■ Section 1334(b) is not the sole basis for federal jurisdiction in the present case. In Count IV, plaintiff seeks to avoid a fraudulent conveyance pursuant to 11 U.S.C. § 544(b)(1). As discussed *supra* in Part I.A., this statute incorporates state fraudulent conveyance law. The mere fact that federal law incorporates state law does not defeat federal question jurisdiction. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir.2003). Indeed, "when an Act of Congress expressly adopts state law, the state regulations become, in effect, federal law for the purposes of federal question jurisdiction."

---

5. Indeed, plaintiff has already filed a 99–page Complaint and the Proposed Class Action Complaint is 109 pages. The two complaints raise distinct legal claims but contain factual allegations that are substantially identical.

 Contrary to defendants' suggestion, however, judicial economy does not weigh as heavily against remand in the present case as it did in *In re WorldCom*, 293 B.R. at 333. In *WorldCom* the plaintiff's state court action asserted claims under federal securities laws and state law. *Id.* at 312. Thus, the court stated that it was "beyond cavil that judicial economy" would be best served in that case if the court exercised its jurisdiction. *Id.* at

333. In the present case, plaintiff's Complaint does not assert claims under the federal securities laws that are duplicative of those pending before the Court in the Flag Securities Litigation and the state court would not be burdened so heavily by the factual record presented that it is "beyond cavil" that judicial economy strongly weighs against remand. However, it is apparent that there would be some duplication of judicial efforts if we were to remand the case back to state court. Thus, it would be more efficient if the matters proceeded in the same court and this factor tends to weigh against remand.

13B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, Civ.2d § 3563, at 56–57 (1984); *cf.* COLLIER ON BANKRUPTCY § 544.02 (15th Ed.2004) (The "rights and powers [contained in § 544] are conferred on the trustee by federal law."). Therefore, this Court has jurisdiction over Count IV of the Complaint pursuant to 28 U.S.C. § 1331 because it involves a federal question and we have supplemental jurisdiction over the remaining claims. The existence of a basis of jurisdiction independent of § 1334(b) weighs against abstention or equitable remand of this action.

#### 4. *The Presence of Non–Debtors*

Although the claims asserted in the Trustee's Complaint all derive from Flag or the bankruptcy case, the debtor is not a party to this action because it has transferred its right to bring these claims to the Litigation Trust. The fact that this proceeding involves only non-debtors weighs in favor of abstention or equitable remand. *See Universal Well Servs., Inc. v. Avoca Natural Gas Storage, JMC,* 222 B.R. 26, 32 (W.D.N.Y.1998).

#### 5. *The Degree of Relatedness to the Main Bankruptcy Case*

As discussed *supra* in Part I.B., this matter is related to Flag's bankruptcy case because it will require the interpretation and implementation of Flag's Plan. Moreover, the Trustee has asserted a claim "arising under" title 11 in the present action. Although the degree of relatedness between the main bankruptcy case and this proceeding may not be as substantial as it was in *Lummus,* this case is similar to the situation presented in *Lummus* because "but for" Flag's bankruptcy case, this litigation would in all likelihood never have occurred. *Lummus,* 2004 WL 224505, at *5, *9. Therefore, we conclude that this action is sufficiently related to the main bankruptcy case to weigh against remand or abstention.

#### 6. *Forum Shopping*

Defendants contend that plaintiff filed this action in state court to avoid the operation of the stay of discovery provided for in the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B). Both plaintiff and defendants appear to agree that this provision would operate to stay discovery in the present action if we declined to remand this action because a motion to dismiss has been filed in the Flag Securities Litigation. (Pl. Mem. Supp. Mot. Remand at 18 n. 5; Defs. Mem. Opp. Mot. Remand at 21.) Although we do not decide the issue, we note that whether the PSLRA discovery stay is applicable to this action is not settled law. *Compare Tobias Holdings, Inc. v. Bank United Corp.,* 177 F.Supp.2d 162, 167–68 (S.D.N.Y.2001) (holding that discovery was not stayed with respect to the plaintiff's state law breach of contract and tortious interference claims when the plaintiff also asserted claims under the Securities and Exchange Act of 1934 (the "Exchange Act") because the state law claims, though arising out of the same nucleus of facts as the Exchange Act claims, were not fraud claims), *with In re Trump Hotel S'holder Derivative Litig.,* No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug.5, 1997) (holding that the PSLRA discovery stay applied to the plaintiffs' state law claims, but noting that it probably would not have

138

applied if the plaintiffs' suit was purely a derivative suit that included no Exchange Act claims). Indeed, the plain language of the PSLRA suggests that the discovery stay applies only to actions brought under the Exchange Act. While this Court has accepted the present action as related to the Flag Securities Litigation, we have not consolidated the two actions for trial. Thus, the present action does not implicate any Exchange Act claims. Accordingly, we conclude that this factor neither supports remand nor weighs against it because, given the unsettled law in this area, it is not apparent that plaintiff engaged in forum shopping when it filed suit in New York.

### 7. *Discretionary Remand is Inappropriate in the Present Case*

 Upon weighing the aforementioned factors, we conclude that permissive abstention and equitable remand are inappropriate in this case. Although the present action involves non-debtors, judicial economy would be best served if both the present action and the Flag Securities Litigation proceeded before the same court. Moreover, plaintiff's Complaint appears to rely extensively upon Bermuda law so it does not appear that issues of New York State law will ultimately predominate in this case. Even if issues of New York law were to predominate, the claims presented are not so complex as to require remand to state court. Finally, the present action is closely related to Flag's bankruptcy case and this Court has jurisdiction pursuant to both 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 1331, 1367(a). Accordingly, plaintiff's motion to remand this action to state court pursuant to § 1334(c) or on equitable grounds is denied.

### CONCLUSION

For all of the foregoing reasons, plaintiff's motion to remand this action to the Supreme Court of New York State, New York County, is denied. Plaintiff's motion for attorney's fees pursuant to 28 U.S.C. § 1447(c) is also denied. The Court will also accept this matter as related to *In re Flag Telecom Holdings Ltd. Sec. Litig.,* No. 02 Civ. 3400(WCC).

SO ORDERED.